UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
UNI-CON FLOORS, INC.          )
            Plaintiff,        )
                              )
v.                            )   C.A. No.: 05-10463 NG
                              )
BRICKLAYERS & ALLIED CRAFTSMEN)
UNION, LOCAL 3 – EASTERN      )
MASSACHUSETTS                 )
            Defendant.        )
_____)

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

I.   Introduction

This is an action to enforce a labor arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff Uni-Con Floors, Inc. (hereinafter "Uni-Con" or "Company"), and Defendant Bricklayers and Allied Craftsmen, Local No. 3, Eastern Massachusetts (hereinafter "Local 3" or "Union"), are parties to a collective bargaining agreement that provides for final and binding arbitration of disputes under the agreement before the "Arbitration Board." The Arbitration Board consists of three members from Local 3 and three members from the Marble, Tile and Terrazzo Contractors Association of Massachusetts.

On January 25, 2005, the Arbitration Board issued an arbitration award in which it found that the Plaintiff violated the agreement by intentionally evading the terms, requirements, and provisions of the collective bargaining agreement by utilizing American Floor Covering, Inc., to perform work covered by the agreement on a job known as the "University of Massachusetts Dartmouth project".

As Plaintiff received proper notice of the arbitration hearing, and as the award draws its essence from the collective bargaining agreement, and there are no genuine issues of material fact in dispute, summary judgment in favor of the Defendant is appropriate.

II.     Statement of Undisputed Material Facts

Bricklayers and Allied Craftsmen Local No. 3, Eastern Massachusetts, is the authorized collective bargaining representative for marble masons, tile layers, terrazzo mechanics, and marble, tile, and terrazzo finishers in eastern Massachusetts. Local 3 and the Marble, Tile and Terrazzo Contractors Association of Massachusetts are parties to a collective bargaining agreement with effective dates of January 1, 2003 to July 31, 2007. Plaintiff Uni-Con is bound by the agreement by virtue of having signed an "Independent Agreement" on March 21, 2001, whereby Uni-Con agreed to be bound by the terms of the collective bargaining agreement between Local 3 and the Marble, Tile and Terrazzo Contractors Association of Massachusetts.

Article XV of the agreement includes a grievance and arbitration provision for the handling of disputes over the interpretation of the agreement before an Arbitration Board. Pursuant to Article XV, the Arbitration Board is made up of a committee of not more than six (6) individuals, consisting of three (3) members from the Union and three (3) members from the Marble, Tile and Terrazzo Contractors Association of Massachusetts. Article XV of the agreement mandates that the Arbitration Board's decisions are "final and binding on both parties."

In a letter dated November 2, 2004, Charles Raso, President/Secretary-Treasurer of Local 3, notified Jon Pacheco of Uni-Con Floors that the Union was requesting

arbitration over the Company's alleged violation of Article I, Section 3 of the collective bargaining agreement with respect to a project at the University of Massachusetts-Dartmouth. Article I, Section 3 of the agreement states:

Work Preservation

1. Purpose- All applicable work in the territorial jurisdiction of Local No. 3 shall be performed under the terms of this Agreement.
2. Procedure- The Employer agrees that no evasion of the terms, requirements, and provisions of this Agreement will take place. In order to prevent any device or subterfuge to avoid the protection of this Agreement and in order to preserve the protection of this Agreement and in order to preserve work, it is hereby agreed as follows: If and when the Employer shall perform any job site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership or any other business entity, including a joint venture, wherein the employer, through its officers, directors, partners or stockholders, exercise either directly or indirectly, (such as through family members) any significant degree of management, control or ownership, the terms and conditions of this Agreement shall be applicable to all such work.
3. Remedy- All charges of violations of Paragraph (2) of this Section shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XV of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XV is empowered at the request of the Union, to require an Employer to (1) pay to affected Employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of the violations, and (2) pay into the affected joint Trust Funds established under this Agreement any delinquent contributions to such Funds which have resulted from violations. Provision for this remedy herein does [not] make the same of other remedies unavailable to this Union for violations of other Sections or other Articles of this Agreement.
If, as a result of violations of this Section, it is necessary for the Union and/or the Trustees of the joint Trust Funds to institute court action to enforce an award rendered in accordance with the sub-section above, or to successfully defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus costs of the litigations, which have resulted from the bringing of such court action.

Raso also asked in the November 2, 2004 letter that Pacheco contact him as soon as possible to arrange a mutually agreeable date, time, and place for the arbitration.

On November 10, 2004, Raso notified Pacheco via letter that the Union was setting the arbitration hearing for Wednesday, December 1, 2004 at 10:00 a.m. at Local 3's offices at 550 Medford Street, Charlestown, Massachusetts. The parties subsequently mutually agreed to change the date of the arbitration hearing to December 21, 2005.

In a letter dated December 20, 2004, David M. Fleury, Esq., legal counsel for Uni-Con Floors, notified the office of Local 3's attorney, Michael A. Feinberg, Esq., that Mr. Pacheco was not available for the arbitration hearing scheduled for the next day, December 21, 2004. Attorney Feinberg responded to Attorney Fleury by letter dated December 21, 2004, in which he informed Attorney Fleury that while the Union would agree to postpone the arbitration hearing scheduled for December 21, 2004, the Union still intended to proceed to arbitration on the charge that Uni-Con violated Article I, Section 3, the Work Preservation clause of the collective bargaining agreement with respect to the project at the University of Massachusetts-Dartmouth.

Subsequently, in a letter dated January 7, 2005, Attorney Feinberg notified Attorney Fleury that the previously postponed arbitration hearing concerning Uni-Con Floors and the University of Massachusetts- Dartmouth project would now be held on Tuesday, January 25, 2005 at 9:30 a.m. at Local 3's offices at 550 Medford Street, Charlestown, Massachusetts.

On January 25, 2005, a hearing was held before the Arbitration Board. Neither John Pacecho nor Attorney Fleury appeared for the hearing. The Union presented evidence that Uni-Con violated Article I, Section 3 of the agreement by utilizing

4

American Floor Covering, Inc., to perform certain tile work at the University of Massachusetts-Dartmouth project, and that John Pacecho was the principal officer of American Floor Covering, Inc., and was the same individual who was the principal officer of Uni-Con Floors, Inc.  At least as late as October 20, 2004, John Pacheco was the President, Secretary, and Treasurer of American Floor Covering, Inc.

After considering the evidence presented, the Arbitration Board unanimously found that Uni-Con was in violation of Article I, Section 3 of the agreement, and that Uni-Con intentionally evaded the terms, requirements, and provisions of the agreement by utilizing American Floor Covering, Inc., to perform the work covered by the agreement.  Pursuant to Article I, Section 3(3) of the agreement, the Arbitration Board ordered as its remedy that Uni-Con:

(1) Immediately cease and desist the use of American Floor Covering, Inc., to perform work covered by the collective bargaining agreement on the University of Massachusetts Dartmouth project;
(2) Pay to employees who would have been referred to the job by the Union the equivalent of wages lost by such employees as a result of the violation engaged in by Uni-Con Floors, Inc.; and
(3) Pay into the affected joint Trust Funds established under the collective bargaining agreement any delinquent contributions to such Fund which have resulted from Uni-Con Floors, Inc.'s violation.

Lastly, the Arbitration Board ruled that if it was necessary for the Union to have to proceed to federal court to enforce the arbitration award, or should the Union have to defend an action by Uni-Con to vacate the arbitration award, then Uni-Con would be responsible for "any accountants' and attorneys' fees incurred by the Union . . . plus the cost of litigation, which may occur as a result of the court action."

In a letter dated February 8, 2005, and sent via certified mail, Attorney Feinberg informed Attorney Fleury that the Arbitration Board had met on January 25, 2005 to hear

the grievance between Local 3 and Uni-Con, and that the Arbitration Board had found that Uni-Con had violated Article I, Section 3 of the collective bargaining agreement, and ordered the aforementioned remedy. Attorney Feinberg enclosed a copy of the Arbitration Board's Award with his February 8, 2005 letter to Attorney Fleury.

On February 23, 2005, David Frates of Uni-Con Floors telephoned Attorney Feinberg's office and told his assistant, Kathi Baldwin, that he would like a copy of the January 7, 2005 letter. Mr. Frates stated that Attorney Fleury had received the February 8, 2005 letter from Attorney Feinberg that enclosed the arbitration award and that referenced the January 7, 2005 letter from Attorney Feinberg notifying Attorney Fleury of the rescheduled arbitration hearing date, but that Attorney Fleury had allegedly not received the January 7, 2005 letter.

On March 2, 2005, Attorney Fleury sent a letter to Attorney Feinberg in which he claimed that on January 25, 2005, his secretary spoke with Attorney Feinberg's office and advised that he was ill and unable to attend the hearing; that Mr. Pacheco was not in the state; and that he was requesting a new arbitration date.

On that same day, Attorney Feinberg responded to Attorney Fleury's letter, pointing out that Mr. Fleury had not called Mr. Feinberg's office on January 25, 2005 to request a postponement, but rather that "on the morning of December 21, 2004, your secretary informed my assistant that you had scheduled another matter for that day and that Mr. Pacheco was in Florida vacationing. At your request, the hearing scheduled for that day [December 21, 2004] was postponed."

Attorney Fleury then faxed another letter to Attorney Feinberg in which he stated that he was not claiming that he never received the January 7, 2005 hearing notice.

6

The Union thereafter refused to agree to another arbitration hearing as requested by Uni-Con Floors.

III.   Argument

   A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  Rule 56(c) provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Perez De La Cruz v. Crowley Towing and Transportation Co.,* 807 F.2d 1084, 106 (1st Cir. 1986), *cert. denied*, 487 U.S. 1050 (1987).

Material facts are those that have the potential to affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).  The existence of a factual dispute will not necessarily defeat a summary judgment motion.  "[T]he requirement is that there must be a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to a case determines whether a particular factual dispute is material, and the court should assess the evidence to determine the genuineness of the factual dispute. *Id*.  No genuine issue for trial exists where the record taken as a whole could not lead a rational trier of facts to find for the

nonmoving party. *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

After the moving party meets its burden, the nonmoving party bears the burden of placing at least one material fact into dispute after the movant offers evidence of the absence of a genuine issue. *Darr v. Muratore*, 8 F.3d 854, 859 (1st Cir. 1993). Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Medina Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

    B.    <u>Defendant is Entitled to Enforcement of the Arbitration Award Pursuant to the Standard of Review of Arbitration Awards under Section 301 of the Labor Management Relations Act.</u>

Section 301 of the Labor Management Relations Act vests federal district courts with jurisdiction to enforce collective bargaining agreements. 29 U.S.C. §185; *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 (1957). Section 301 likewise vests courts with jurisdiction to enforce or vacate arbitration awards rendered pursuant to arbitration clauses of collective bargaining agreements. *United Paperworkers Int'l. Union v. Misco, Inc.,* 484 U.S. 364 (1987).

In Section 301 actions, the "judicial review of an arbitration award is among the narrowest known to the law." *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989). Any review is "extremely narrow and extraordinarily deferential." *Service Employees Int'l Union v. Local 1199, N.E.*, 70 F.3d 647, 651 (1st Cir. 1995). Courts "shall uphold an arbitrator's interpretation of a contract so long as we can find *some plausible argument* that favors his interpretation." *Crafts Precision*

8

*Ind., Inc. v. Lodge No. 1836, Int'l Ass'n of Machinists*, 889 F.2d 1184 (1st Cir. 1989) (Emphasis added). Even in summary judgment cases, this highly deferential standard governs judicial review of arbitration awards. *El Dorado Technical Serv., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1ˢᵗ Cir. 1992) (affirming enforcement of arbitration award on summary judgment).

This exceptionally limited judicial review of arbitration awards is based on fundamental principles of federal labor law and policy. In the "Steelworkers Trilogy,"[1] the Supreme Court established definitive standards for the enforcement of labor arbitration agreements and awards under Section 301. In doing so, the Court declared that the policies relating to ordinary commercial arbitration were inapplicable to labor arbitration, and held that national labor policy mandated special treatment and deference to arbitration. *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 577-78, 581 (1960).

Accordingly, in Section 301 of the Act, Congress authorized federal courts to fashion a body of federal common law in actions relating to labor arbitration in order to promote a national labor policy. *Id*.; See also: *United Steelworkers of America v. Enterprise Wheel,* 363 U.S. 592, 596-99 (1960). The Court noted, in construing labor contracts, that "the labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts." *Warrior and Gulf*, 263 U.S. at 581. Accordingly, courts have no choice but to uphold an arbitration award "so long as it draws its essence from the collective bargaining

---

[1] *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S 592 (1960).

agreement." *Enterprise Wheel*, 363 U.S. at 597. The Supreme Court admonished that a court may not set aside an award because "[it] merely disagree[s] with the arbitrator's construction of the collective bargaining agreement." *Id*. at 598.

In *United Paperworkers Int'l. Union v. Misco Inc.*, 484 U.S. 29 (1987), the Supreme Court again confirmed that deferential treatment is to be given to arbitration awards in its decision. The Court went so far as to state "a court should not reject an award on the ground that the arbitrator misread the contract." *Id*. (emphasis added); See also: *Trustees of Boston University v. Boston University Chapter, American Assn. of Univ. Professors*, 746 F.2d 924 (1st Cir. 1984).

   1. <u>The Arbitration Board's Award is Enforceable and Governed by the Same Principles as is an Individual Arbitrator's Award.</u>

Article XV of the collective bargaining agreement provides for a grievance and arbitration process for handling disputes over the interpretation of the provisions of the agreement. The agreement establishes an Arbitration Board, comprised of representatives from both Local 3 and the Contractors Association.

The Arbitration Board's award should be treated in the same manner as an award from an individual arbitrator. Section 301 authorizes federal courts to enforce final and binding decisions and awards by a joint union-employer grievance panel. See: *International Brotherhood of Electrical Workers, Local 910, AFL-CIO v. Roberts*, 992 F.Supp. 132, 134 (N.D.N.Y.1998). "These awards, like arbitration awards, are entitled to considerable deference from the courts." *Id*. at 135. "Courts have found, that as a general proposition, labor-management committee decisions are final and binding arbitration awards." *Team Electric M.V. Inc. v. Local Union No. 701 of the International Brotherhood of Electrical Workers*, 2001 U.S. Dist. LEXIS 17869 (N.D.Ill.) (October 19, 2001). An award is

enforceable under Section 301 if it is "the parties' chosen instrument for the definitive settlement of grievances." *General Drivers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963).

Thus, the Arbitration Board's decision should be granted the same respect, and ultimately enforced, as the Court would treat a more traditional award from an individual arbitrator. In *Local Union 1253, Int'l Brotherhood of Elec. Workers v. S/L Construction, Inc.*, 217 F.Supp.2d 125 (D.Me. 2002), a local union and its associated benefit funds sought to enforce the rulings of a joint labor-management committee that had found an electrical contractor to have violated the agreement. The employer signed an "Inside Agreement," a collective bargaining agreement between an electrical contractors association and the local union that obligated signatory employers to pay certain wages, make contributions to fringe benefits funds, and obtain employees exclusively through the union's hiring hall. *Id*. at 128. The word "Arbitration" did not appear in the provisions. The agreement provided for three steps: an informal resolution between representatives of the parties; an "adjustment" by a Labor-Management Committee comprised of three union representatives and three employer association representatives; and final and binding adjudication before the Council on Industrial Relations for the Electrical Contracting Industry. *Id*. The agreement authorized the Committee to hear "all grievances or questions in dispute" and provided for an appeal to the Council on Industrial Relations in the event the Committee deadlocked. *Id*.

The Court held that because the Committee's ruling was a final and binding award and that the parties had agreed to arbitrate the dispute upon which the Committee ruled, the Court was required to uphold the award because it drew its essence from the agreement. Although the agreement stated that the decision of the Council on Industrial Relations was

11

binding on the parties, the agreement was silent as to whether the *Committee's* decision, if not appealed, was final and binding. *Id*. at 132. The Court nonetheless enforced the Committee's decision, noting that other courts had concluded that similar or identical provisions that authorized joint labor-management committees to issue arbitration awards were entitled to judicial enforcement. *Id*.

Here, Article XV of the agreement establishes an Arbitration Board comprised of three members of the Union and three members of the Contractors Association. Article XV states that the decisions of the Arbitration Board are final and binding on the parties. The award is therefore the equivalent of an arbitration award issued by an individual arbitrator.

2. <u>The Award Draws its Essence from the Collective Bargaining Agreement.</u>

The decision of the Arbitration Board, like that of an individual arbitrator, shall be enforced "'as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority.'" *Local Union 1253,* 217 F.Supp.2d at 137, quoting *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001).

In the instant case, Local 3 charged that Uni-Con floors violated Article I, Section 3, the Work Preservation clause, by attempting to evade the terms of the agreement by using American Floor Covering, Inc., to perform work within Local 3's jurisdiction on the University of Massachusetts-Dartmouth project.

Article I, Section 3 of the agreement provides that the Employer "agrees that no evasion of the terms, requirements, and provisions of this Agreement will take place." Consequently, "to prevent any device or subterfuge to avoid the protection of this Agreement and in order to preserve the protection of this Agreement and in order to preserve work," then "if and when the Employer shall perform any job site construction

work of the type covered by this Agreement, ***under its own name or under the name of another***, as a corporation, company, partnership or any other business entity, including a joint venture, ***wherein the employer, through its officers, directors, partners or stockholders, exercise either directly or indirectly, (such as through family members) any significant degree of management, control or ownership***, *the terms and conditions of this Agreement shall be applicable to all such work."*

Here, the Arbitration Board found that Uni-Con Floors was using American Floor Covering, Inc., to perform work covered by the collective bargaining agreement, namely, the UMass-Dartmouth project. In reaching this decision, the Arbitration Board held that John A. Pacheco was an officer of American Floor Covering, as well as the principal officer of Uni-Con Floors.

It is undisputed that Mr. Pacheco is a Clerk and Director of Uni-Con Floors, and that he signed the collective bargaining agreement with the Union on behalf of Uni-Con Floors. In addition, it is undisputed that at least until October 20, 2004, a mere two weeks prior to the Union's initial request for arbitration regarding the University of Massachusetts-Dartmouth project, Mr. Pacheco was the President, Secretary, and Treasurer of American Floor Covering, Inc.[2] The Arbitration Board therefore found that American Floor Covering, Inc., was a corporation performing bargaining unit work covered by the collective bargaining agreement to which Uni-Con Floors is signatory, and that it was a company over which Uni-Con Floors, and specifically Mr. Pacheco, exercised a significant degree of management, control and/or ownership. Therefore, the

---

[2] On or about October 20, 2004, John Pacheco, as Chairman of the Board of Directors President, "other officer", and "Court-appointed fiduciary" of American Floor Covering, Inc., filed a "Statement of Change of Supplemental Information Contained in Article VIII of Articles of Organization," whereby Avraham Weizman was listed as the new President, Treasurer, Secretary, and Director of the corporation.

arrangement violated Article I, Section 3 of the agreement based upon the finding that Uni-Con Floors was using American Floor Coverings, Inc., to evade the terms of the agreement.[3]

Thus, the Arbitration Board's award draws its essence form the terms of the collective bargaining agreement, and should therefore be enforced.

C. Plaintiff Was Properly Notified of the Hearing Date and of the Arbitration Board's Decision.

The evidence establishes that Uni-Con Floors was clearly notified via letter sent to its attorney dated January 7, 2005, that an arbitration hearing would be held on January 25, 2005. The arbitration hearing was originally scheduled for December 21, 2004. On December 20, 2004, however, Attorney Fleury requested a postponement pursuant to a telephone call and a letter sent via facsimile to Attorney Feinberg's office. Attorney Fleury requested the postponement on behalf of Uni-Con because John Pacheco was unable to attend the hearing. The Union agreed to the postponement of the hearing, but Attorney Feinberg clearly stated in his responsive letter to Attorney Fleury dated December 21, 2004, that the Union still intended to pursue the grievance involving the UMass-Dartmouth project before the Arbitration Board.

The Union, through Attorney Feinberg, thereafter notified Attorney Fleury via a letter dated January 7, 2005, that the Arbitration Board would be convened for a hearing regarding the University of Massachusetts-Dartmouth project grievance on January 25,

---

[3] Plaintiff claims that the Arbitration Board's finding that Mr. Pacheco was the principal officer of American Floor Covering, Inc. was in error. However, Plaintiff could have argued this at the January 25, 2005 arbitration hearing, but it chose not to attend. In any event, the evidence shows that Mr. Pacheco was the President of American Floor Covering, Inc. at least as late as October 20, 2004, when it was performing the disputed work, and which was just days prior to the filing of the Union's grievance.

2005, at 9:30 a.m. at the Union's offices at 550 Medford Street, in Charlestown, Massachusetts.

Having heard no protest from either Attorney Fleury or Mr. Pacheco concerning the new date for the hearing, the Arbitration Board held the hearing on January 25, 2005. While the Union presented its evidence, neither Attorney Fleury nor Mr. Pacheco attended the hearing. At no time prior to January 25, 2005 did either Attorney Fleury or Mr. Pacheco contact the Union, the Arbitration Board, the Contractors Association, or Attorney Feinberg to indicate that they would be unable to attend, or to request a rescheduling of the hearing. The arbitration award was subsequently issued in the Union's favor, and was mailed to Attorney Fleury on February 8, 2005.

On February 23, 2005, two weeks after the Award was received by Uni-Con Floors, David Frates of Uni-Con Floors telephoned Attorney Feinberg's office and told his assistant, Kathi Baldwin, that Attorney Fleury had not received the January 7, 2005 letter.

However, in a letter dated March 2, 2005 addressed to Attorney Feinberg, Attorney Fleury claimed that his secretary spoke with Attorney Feinberg's secretary on "the day of the arbitration" and informed her that Mr. Fleury "was ill and unable to attend," and also added "that Mr. Pacheco was not in the state and requested a new arbitration date." Attorney Fleury also claimed that he had also sent a facsimile on January 25, 2005, requesting postponement of the hearing.

On that same day, March 2, 2005, Attorney Feinberg faxed a letter back to Attorney Fleury and advised him that he had his dates confused. Attorney Feinberg explained that the telephone call had been made and a facsimile sent on December 20-21,

15

2004, regarding the postponement of the arbitration hearing scheduled for December 21, 2004. That postponement was granted, but at no time did Mr. Feinberg or the Union receive a phone call or a facsimile on the morning of January 25, 2005, regarding the postponement of the hearing scheduled for that day. Attorney Fleury then faxed another letter to Attorney Feinberg on March 2, 2005, in which he stated that he was *not* claiming that he did not have notice of the January 7, 2005 letter.

The Union therefore agrees that on December 20, 2004, Attorney Fleury faxed Attorney Feinberg's office with a request for a postponement of the arbitration hearing scheduled for the next day, December 21, 2004, and that he reiterated this request via telephone on December 21, 2004. The Union indeed agreed to the postponement. There was no similar phone call or letter from Attorney Fleury on January 25, 2005 seeking to postpone the hearing for a second time, however. Attorney Fleury is attempting to transpose the events of December 21, 2004 as having occurred on January 25, 2005.

This fabricated argument falls apart, however, when one considers that while Attorney Fleury requested a postponement of the December 21, 2004 hearing both in writing and orally, there was absolutely no written request to postpone the January 25, 2005 hearing. All that is left, then, is this alleged undocumented phone call allegedly placed, at the last minute, to Attorney Feinberg's office. Moreover, since Plaintiff and Attorney Fleury are no longer claiming that he did not receive notice of the January 25, 2005 hearing via Attorney Feinberg's January 7, 2005 letter, [4] it is clear that Plaintiff had at least two

---

[4] Initially, Uni-Con took the position, through David Frates, that Attorney Fleury had never received the January 7, 2005 letter addressed to him concerning the rescheduling of the arbitration hearing to January 25, 2005. Since that time, however, specifically in Attorney Fleury's letter to Attorney Feinberg dated March 2, 2005, and in Plaintiff's Complaint, Attorney Fleury now specifically denies ever having maintained that he did not receive the January 7, 2005 Notice of Hearing.

16

weeks notice prior to the January 25, 2005 arbitration hearing in which to request a second postponement of the hearing due to Mr. Pacheco allegedly being out-of-state. At the very least, some attempt should have been made to reduce the postponement request to writing. No such documentation exists, however.

It is undisputed that Attorney Fleury received the January 7, 2005 letter from Attorney Feinberg notifying him of the rescheduled hearing date. As no one from Attorney Feinberg's office received a last-minute phone call from Attorney Fleury on January 25, 2005 (although Defendant admits that it did receive a phone call from Attorney Fleury on December 21, 2004, concerning the initial hearing date), it is clear that Plaintiff received proper notice of the hearing, and did not timely seek a postponement of the hearing. Therefore, it cannot be said that Plaintiff was prejudiced by the fact that it did not attend the arbitration hearing on January 25, 2005. The Arbitration Board's award should therefore be enforced.

IV.     Conclusion.

For all of the foregoing reasons, and on the record as a whole, the Court should grant Defendant's Motion for Summary Judgment in its entirety, and enforce the Arbitration Board's award.

        Respectfully submitted,

        For Defendant Bricklayers and
        Allied Craftsmen Local 3
        Eastern Massachusetts

        By its Attorney

        /s/ Jonathan M. Conti
        Jonathan M. Conti, BBO#657163
        Feinberg, Campbell & Zack, P.C.
        177 Milk Street
        Boston, MA 02109
        (617) 338-1976

Dated this 16th day of November 2005.