UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNI-CON FLOORS, INC )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BRICKLAYERS & ALLIED CRAFTSMEN )<br>UNION, LOCAL 3 - EASTERN )<br>MASSACHUSETTS )<br>    Defendant. )<br>) | C.A. No.: 05-10463-NG |

SOROKIN, M. J.

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  I recommend that the Court ALLOW Defendants' Motion to Strike (Docket #22); ALLOW Defendant's Motion for Summary Judgment (Docket # 6); and enter Judgment in favor of Defendant.

  A. Defendant's Motion to Strike

  Defendant filed its Motion for Summary for Judgment on November 16, 2005. At the time of the Rule 16 Scheduling Conference on December 28, 2006, Plaintiff had not: (1) filed an opposition to the Motion, nor a Motion for any additional time to file any opposition; (2) filed a statement in advance of the Rule 16 Conference as required by that rule; or (3) responded to Defendant's proposed joint statement served on Plaintiff's counsel.

  Plaintiff's counsel did not appear at the Conference despite the Court's issuance of two notices regarding the hearing. The Court ultimately reached Plaintiff's counsel on his cell phone,

and confirmed counsel's business address, to which the notices of the hearing had been sent.

Upon inquiry from the Court, Plaintiff's counsel requested additional time to respond to Defendant's Motion, until January 6, 2006. Accordingly, the Court ordered that Plaintiff "shall file his opposition to Defendant's Motion for Summary Judgment by the close of business January 6, 2005 [sic]. No extensions in this date will be allowed." No opposition was filed in the Clerk's Office by January 6, 2006.

Without a Motion either for Leave to File Late or to Extend the January 6th deadline, Plaintiff filed its opposition on January 10, 2006. Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Docket #17)("Plaintiff's Opposition").[1] On January 13, 2006, Defendant moved to strike Plaintiff's Opposition as untimely in light of the Court's earlier Order. Defendant's Motion to Strike (Docket # 22). Plaintiff has neither opposed this Motion to Strike nor sought more time to oppose the Motion.

Based upon these facts, I recommend that Defendant's Motion to Strike Plaintiff's Opposition be ALLOWED.

B.     Defendant's Motion For Summary Judgment.

Should the Court adopt my recommendation above and ALLOW Defendant's Motion to

---

[1] There can be no dispute that Plaintiff's Opposition was not timely filed, as the Court requires that "all pleadings and other papers submitted to the court must be filed, signed, and verified by electronic means" (Local Rule 5.4(A) (effective January 1, 2006)) and, "[a]ll electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day." Local Rule 5.4(B). Despite this directive, Plaintiff mailed its Opposition to the Clerk of Court and served its Opposition upon defense counsel in the same manner, as attested in Plaintiff counsel's Certificate of Service, dated January 5, 2006 (Averring Attorney Fleury served the Opposition "via regular mail, postage prepaid to counsel of record for the Defendant") (Docket # 21). Plaintiff's Opposition and accompanying papers were received by regular mail in the Clerk's Office on January 10, 2006.

Strike Plaintiff's Opposition, then Defendant's Motion for Summary Judgment should similarly be ALLOWED as unopposed. In the event that the Court does not allow the Motion to Strike, however, I recommend that Defendant's Motion for Summary Judgment be ALLOWED for the reasons set forth below.

In this action, Plaintiff Uni-Con Floors ("Uni-Con") seeks to vacate an arbitration award entered against it in favor of Defendant Bricklayers and Allied Craftsman Union, Local 3-Eastern Massachusetts (the "Union"). Plaintiff essentially advances two reasons for vacating the award.

*1. The Continuance*. Plaintiff contends that it sought a continuance of the January 25, 2005 arbitration hearing because Plaintiff's counsel took ill that day. Accordingly, Plaintiff argues, the arbitration board should not have proceeded with the one- party hearing. Defendant disputes that Plaintiff ever sought a continuance. The record evidences the following facts.

The Union requested arbitration of its grievance in a letter dated November 2, 2004. Affidavit of Charles Raso dated November 15, 2005 (Docket # 9)("Raso Aff."), Ex. C (Letter from Charles Raso to John Pacheco dated November 2, 2004). Subsequently, the Union set an arbitration date of December 1, 2004. Raso Aff., Ex. D (Letter from Charles Raso to John Pacheco, dated November 10, 2004).[2] This date was later changed to December 21, 2004. Plaintiff sought a continuance of that date as well, however, because John Pacheo, an important officer or employee of the plaintiff, was in Florida "for the winter." Plaintiff's Exhibit List

---

[2] In this letter, Mr. Raso states: "Reference is made to our telephone conversation on November 9, 2004, wherein you refused to set a mutually convenient date, place and time for arbitration . . .Since you have refused arbitration, the union is setting the arbitration hearing as follows . . ." Id.

(Docket # 20) ("Plaintiff's Ex."), Exs. B (letter from Attorney Fleury to Attorney Feinberg dated December 7, 2004)& C (letter from Attorney Fleury to Attorney Feinberg dated December 20, 2004). Accordingly, the December 21, 2004 arbitration was cancelled. See Raso Aff., Ex. F (Letter from Attorney Feinberg to Attorney Fleury dated December 21, 2004)(noting cancellation of arbitration that day).

In a January 7, 2005 letter to Uni-Con's counsel, the Union notified Uni-Con of the new arbitration hearing date of January 25, 2005. Raso Aff., Ex. G (Letter from Attorney Feinberg to Attorney Fleury). Plaintiff "does not contest the fact that it received proper notice of the January 25, 2005 Arbitration Hearing." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket #18) ("Plaintiff's Memorandum") at pg. 10. The dispute develops here.

Plaintiff's counsel attests that:

On January 25, 2005, the arbitration hearing was to be conducted. On the day of the hearing, I was ill and unable to attend. On the morning of January 25, 2005, a facsimile was sent and a telephone call was placed by my legal assistant advising the same. (See attached **Exhibit D**). I confirmed this with the legal assistant later that day.

Affidavit of Attorney David Fleury ("Fleury Aff."), attached to Plaintiff's Memorandum, at ¶ 9(emphasis in original). Plaintiff's Exhibit D is a form fax cover sheet with a handwritten note addressed to defendant's counsel:

Mr. Pacheco has not returned to the Commonwealth from Florida. Furthermore, Atty. Fleury is out sick today. I have simultaneously left a message with your office. Please advise regarding re-scheduled date. Thank you.

(Fax from "Chris @ Attorney David Fleury's office" to Michael A. Feinberg, Esq., dated January 25, 2005). This document does not have a facsimile transmittal line at the top that would

4

(a) indicate that it had been sent and (b) display the date, time and number of such a transmission.  Id.  Plaintiff has not submitted either a fax transmittal sheet with such information, nor an affidavit from the legal assistant attesting that this document was sent at the date and time asserted by counsel.

Defendant's counsel submits an affidavit in which he attests that his office "never received a facsimile from Attorney David Fleury's office on January 25, 2005, requesting a postponement of the arbitration hearing."  Second Affidavit of Michael A. Feinberg, Esq., dated January 20, 2006 (Docket #24) at ¶ 2.  Defense counsel further attests that, "Prior to receiving Plaintiff's Opposition . . . I had never previously seen the document included as Exhibit D and attached to Attorney Fleury's Affidavit."  Id. at ¶ 3.  Defense counsel also attests that he never received "any notification, either in writing or over the telephone" from anyone, that Plaintiff would not be able to attend the arbitration on January 25, 2005.  Affidavit of Michael A. Feinberg, Esq., dated November 16, 2006(docket #10-1) at ¶ 8.

Plaintiff submits no evidence that it made any effort to contact the Arbitration Board, either at its administrative offices or at the Union offices (where the hearing was held), in order to request and/or confirm that the arbitration be postponed.  Notably, the Arbitration Board Award states that "No request was made for any continuance of the January 25, 2005 hearing."  Raso Aff., Ex. I at pg. 1.  The Board was composed of three union and three contractor representatives.  Id. at pg. 2.

Defendant moves for summary judgment.  As the moving party, Defendant bears the burden of showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Moreover, the Court

views the record in the "light least hostile" to Plaintiff as the non-moving party, and draws all reasonable inferences in its favor. Perkins v. Brigham & Women's Hospital, 78 F.3d. 747, 748 (1st Cir.1996). Even with this deference to Plaintiff, however, the record compels the conclusion that Plaintiff did not seek a continuance.

Plaintiff offers two pieces of evidence to support its contention that it sought a continuance. The first is Plaintiff's counsel's affidavit, in which he attests that on January 25, 2005, the day of the scheduled arbitration, "a facsimile was sent and a telephone call was placed by [his] legal assistant," which he "confirmed. . . with the legal assistant later that day." Fleury Aff. at ¶ 9. This affidavit runs afoul of the requirements of Fed. R. Civ. P. 56(e), however, that "[s]upporting and opposing affidavits shall be made on *personal knowledge*, [and] shall set forth such facts as would be *admissible in evidence*"(emphasis added). Plaintiff's counsel's statement is not made from counsel's "personal knowledge" as to whether or not the fax and phone call were made. See id.

Moreover, counsel's averment as to the legal assistant's confirmation is not admissible evidence; rather, it is hearsay, i.e. a "statement, other than one made by the declarant . . . offered into evidence to prove the truth of the matter asserted." Fed. R. Evid. 801 (c). Counsel offers his assistant's statement that she sent the facsimile and made the phone call, for the truth of the matter that she did perform these actions. Hearsay is generally not admissible and this statement does not fall within any exceptions to that rule; accordingly, the statement is inadmissible for the truth of the matter asserted. Fed R. Evid. 802.

Next, Plaintiff offers the "January 25, 2005 Correspondence," i.e. the facsimile that Attorney Fleury states was sent to counsel for Defendant, seeking a continuance of the hearing.

Plaintiff's Ex. D.  As noted above, however, there is no admissible evidence that this facsimile was sent, as counsel's statement of the legal assistant's confirmation is inadmissible.  There is no facsimile transmission line nor any fax transmittal sheet that might confirm that the facsimile was sent, as also noted above.

Even if, arguendo, Plaintiff's Ex. D gave rise to an inference in Plaintiff's favor that the facsimile was sent, however, there is no evidence that the request for the continuance was <u>received</u>.  To the contrary, defense counsel affirmatively states that he did not receive "any notification, either in writing or over the telephone" that Plaintiff would not be able to attend the arbitration on January 25, 2005.[3]  Affidavit of Michael A. Feinberg, Esq., dated November 16, 2006(docket #10-1) at ¶ 8.  It is therefore undisputed that Defendant did not receive any notice of a continuance.  Even if the Court were to credit Plaintiff counsel's affidavit, there is no evidence that Plaintiff sought to communicate with, and/or obtain a continuance from, the Arbitration Board itself, nor is there any evidence that Plaintiff sought confirmation, from anyone, that its request for the continuance had been received and granted.

Any due process or fairness concerns that might ordinarily arise from an arbitration decision rendered from a hearing at which one side failed to appear, due to the sudden illness of counsel, are inapplicable here.  Plaintiff counsel's illness was the second of two reasons asserted for a continuance; Plaintiff also sought the continuance because John Pacheco was in Florida.  Plainly, Plaintiff's counsel was aware of this fact well before the date of the hearing; in fact, the earlier continuance was obtained in part because Mr. Pacheco was in Florida for the winter.

---

[3] I note Plaintiff's counsel wrote to defense counsel on March 2, 2005, about four weeks after the Board issued its decision on February 7, 2005, asserting he had sought a continuance; though this letter did not attach a copy of the January 25, 2005 fax which is Exhibit D here.

Plaintiff's Exs. B, D; Raso Ex. I at pg. 1. In short, counsel had ample notice that the January 25th date posed a problem and ample time to address the problem. Finally, based upon the evidence submitted to this Court, Plaintiff has not established that giving it the opportunity to present its evidence to the Arbitration Board would make a material difference in the outcome of the proceeding. See Infra.

In addition, the record before the Court paints a picture of repeated disregard for deadlines established by the Rules and Orders of this Court. Ironically, in a case brought due to the failure to obtain a continuance on the day of a hearing, Plaintiff failed to respond to the Motion for Summary Judgment within the time provided; failed to respond to Defendant's inquiries in advance of the scheduling conference; failed to appear for the scheduling conference; and, failed to respond to a Motion to Strike its Opposition to the Motion for Summary Judgment.

Accordingly, there is no basis to deny Defendant summary judgment due to the fact that the Board conducted the arbitration without the presence of Plaintiff or its counsel.

2. *The Merits*

Judicial review of an arbitration award ought to be "extremely narrow and extraordinarily deferential." Service Employees Int'l Union v. Local 1199, N.E., 70 F.3d 647, 651 (1st Cir.1995). "In fact, '[j]udicial review of arbitration awards is among the narrowest known in the law.'" First State Ins.Co. v. Banco de Seguros Del Estado, 254 F.3d 354, 357 (1st Cir.2001) (quoting Maine Central Railroad Co. v. Brotherhood of Maint.Way Employees, 873 F.2d 425, 428 (1st Cir.1989)). Thus, the "court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation." El Dorado Technical Servs., Inc., v.

Union General de Trabajadores, 961 F.2d 317, 319 (1st Cir. 1992).  A court should set aside an arbitrator's decision "only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly not fact."  Local 1445, United Food and Commercial Workers Int'l Union v. Stop & Shop Cos., Inc., 776 F.2d 19, 21 (1st Cir. 1985).

The Union's grievance giving rise to the arbitration asserted that Plaintiff violated a collective bargaining agreement by using American Floor Covering ("AFC") for tile work performed on a project at the University of Massachusetts at Dartmouth (the "UMASS Project").  Plaintiff argues that the facts are insufficient to support the Arbitration Board's conclusion that AFC was sufficiently connected to Uni-Con Floors, Inc., such that Uni-Con Floors had to require AFC to use union labor on AFC tile jobs.  The relevant facts are as follows.

The defendant Union, and the Marble, Tile and Terrazzo Contractors Association of Massachusetts, are parties to a collective bargaining agreement.  Raso Aff., Ex. A (the "Collective Bargaining Agreement").  Plaintiff Uni-Con is bound to that agreement by an "Independent Agreement" that it signed with the Union.  Raso Aff, at ¶ 4 and Ex. B thereto (the Independent Agreement).  AFC is not a party to these agreements.

AFC performed tile work for the UMASS Project.  Raso Aff., Ex. I (Arbitration Award decision); Plaintiff's Ex. G (Subcontract between Contractor Suffolk Construction Co. and Sub-Contractor AFC, dated October 29, 2004); Plaintiff's Statement of Undisputed Material Facts at ¶ 23 (docket # 19)("AFC's work on the project was for ceramic tile").

The Arbitration Board unanimously found that Uni-Con violated Article I, Section 3 of

9

the collective bargaining agreement when AFC performed this work, because Uni-Con

> intentionally evaded the terms, requirements and provisions of the collective bargaining agreement by utilizing American Floor Covering, Inc. to perform work covered by the Union's collective bargaining agreement at the University of Massachusetts Dartmouth project.

Raso Aff., Ex. I at pgs. 1-2. The cited provision of the collective bargaining agreement provides:

> If and when the Employer [Uni-Con] shall perform any job site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership or any other business entity, including a joint venture, wherein the employer, through its officers, directors, partners or stockholders, exercise either directly or indirectly, (such as through family members) any significant degree of management, control or ownership, terms and conditions of this Agreement shall be applicable to all such work.

Raso Aff., Ex. A, Art. I, Section 3 at ¶ 2.

The Arbitration Board relied upon evidence that John Pacheco was the "principal officer" of both AFC and Uni-Con. Raso Aff., Ex I at pg. 1. Plaintiff submits no evidence directly attacking this conclusion. For example, neither John Pacheco nor anyone else submits an affidavit attesting that he was not an officer nor director of AFC.[4]

Rather, Plaintiff relies upon undisputed filings with the Secretary of State's Office in an attempt to establish that "there was no legal relationship between UCF and AFC or between AFC and John Pacheco for the time period at or around Ocotber 15, 2004 (when UCF executed [its] subcontract on the [UMASS] project." Plaintiff's Memorandum at pg. 4. These records support the connection between Uni-Con and AFC found by the Arbitration Board, however.

---

[4] There can be no doubt as to Mr. Pacheco's importance to *Uni-Con*. Plaintiff's counsel repeatedly referred to his absence from Massachusetts as the basis for seeking continuances in the arbitration and, in September 2004, he signed a settlement agreement in a different dispute with the Union as "CEO" of Uni-Con. Affidavit of Charles Raso dated January 18, 2006 (docket # 25-1) at ¶ 5 and Ex. 2 thereto.

John Pacheco was the President, Treasurer, Clerk and sole Director of AFC in 2004, according to that company's 2004 annual report.  Plaintiff's Ex. H (2004 Massachusetts Corporation Annual Report, for AFC, dated June 14, 2004).  Nine days before signing the subcontract at issue in this case, however, AFC filed a change of information with the Secretary of State, which listed Avraham Weizman, of 168 Stevens St., Fall River, MA as the President, Treasurer, Secretary and Director of AFC.  Plaintiff's Ex. I; Raso Aff., Ex. H. (Statement of Change of Supplemental Information, dated October 20, 2004).  This document was signed by John Pacheco, as "an authorized individual."  Id.  Additionally, the document designates John Pacheco as AFC's Chairman of the Board,  President, Other Officer and Court-appointed fiduciary.  Id.  Notably, the document does not indicate that Mr. Pacheco had been removed as a director of AFC; moreover, his signature affirms that he was, at the least, a significant member of AFC's governance as the Chairmen of the Board, etc.  Id.  Contrary to Plaintiff's assertion, therefore, this document does not render "undisputed and . . . admitted by Defendant" the fact that John Pacheco was "no longer a . . . director of AFC."  Plaintiff's Memorandum at pg. 8.  Instead, the document supports the Arbitration Board's determination that AFC and Uni-Con shared a "significant degree of management, control or ownership" through Pacheco so that AFC was bound by the Collective Bargaining Agreement.  Raso Aff., Ex. A, Art. I, Section 3 at ¶ 2 (quoted by Arbitration Board Award, Raso Ex. I.)[5]

Other information in the Secretary of State filings also support the connection between the two companies.  On March 21, 2001, Katherine Hebert, President, and Jaime Pacheco,

---

[5] These documents, as well as the omission of an affidavit from Pacheco, rather than establishing that Plaintiff's evidence would have materially helped it at the Arbitration, suggest quite the contrary.

Treasurer, signed the Independent Agreement, which encompassed the collective bargaining agreement, on behalf of Uni-Con. Raso, Ex. B. According to Uni-Con's Annual Report for 2003 and 2004, filed with the Secretary of State, Jaime Pacheco has been a director of Uni-Con with a listed address of 5 Granada Drive, Westport, MA. Plaintiff's Ex. J, L.[6] This is the very same address that John Pacheco listed for himself on AFC's 2004 filing. Plaintiff's Exs. H, K. In addition, the man who signed the tile contract for the UMASS Project on October 29, 2004 as President of AFC, Avrahman Weizman, (Plaintiff's Ex. G) bears a name associated with Uni-Con: Kristine Weizman was a director of Uni-Con according to the 2003 and 2004 annual reports. Plaintiff's Exs. J, L.

In light of all of the foregoing evidence, the Arbitration Board had more than a "plausible basis" for its interpretation of the collective bargaining agreement. El Dorado, 961 F.2d at 319; see Local 1445, 776 F.2d at 21-22 (affirming summary judgment where arbitrator's decision was not unfounded in and fact, nor so "palpably faulty . . .that no judge could ever make such a ruling"). As such, "the narrow scope of judicial review" requires that the Arbitration Award be enforced. Id.

One other issue bears note. At the scheduling conference with the Court on December 28, 2005, Plaintiff's counsel stated that, if the Court denied summary judgment, some discovery would be necessary. In its Opposition, Plaintiff makes the point that no discovery has occurred in this case and that a "motion for summary judgment [is] premature." Plaintiff's Statement of Undisputed Facts at ¶ 34. Defendant's Motion is timely under the Rules. Plaintiff did not submit

---

[6] Plaintiff states that Ex. K is the "2004 Annual Report, Uni-Con Floors." In fact, Plaintiff's Ex. K is a duplicate of Plaintiff's Ex. H, the "2004 Annual Report" for AFC.

an affidavit attesting to the discovery it requires or otherwise explain what discovery it needs in order to fairly prosecute its case. See Adorno v. Crowley Towing & Transportation, Co., No. 05-1839, 2006 WL 852363 at * 4 (1st Cir. April 4, 2006)(affirming denial of additional discovery, noting Plaintiff's arguments "fail to address, let alone cast doubt upon, the court's rationale on the dispositive issue, and disregard Rule 56(f)'s requirement that the requested discovery be capable of influencing the outcome of the motion for summary judgment")(internal citations omitted).

### C. Conclusion

I recommend that the Court:

1. Allow the Motion to Strike (Docket #22);

2. Allow the Motion for Summary Judgment (Docket #13) and enter Judgment in favor of the defendant Union. [7]

Date: April 19, 2006              /s/ Leo T. Sorokin
                                  Leo T. Sorokin
                                  United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).