UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNI-CON FLOORS, INC.,<br>    Plaintiff,<br><br>v.<br><br>BRICKLAYERS & ALLIED CRAFTSMEN<br>UNION, LOCAL 3 – EASTERN MASS.,<br>    Defendant,<br><br>and<br><br>COLONIAL SURETY CO.,<br>    Intervenor. | )<br>)<br>)<br>)  C. A. No. 05-10463 NG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COLONIAL'S OPPOSITION
TO LOCAL 3'S POST-JUDGMENT MOTION FOR APPROVAL
OF TRUSTEE PROCESS AND REQUEST FOR INJUNCTIVE RELIEF**

NOW COMES Colonial Surety Co. ("Colonial") and opposes the Post-Judgment Motion For Approval Of Trustee Process And Request For Injunctive Relief ("Trustee Process Motion") of the Defendant Bricklayer's & Allied Craftsmen Union, Local 3 – Eastern Massachusetts ("Local 3"). As reasons therefore, Colonial states as follows:

Colonial, as surety for Uni-Con Floors, Inc. ("Uni-Con"), has first priority subrogation rights to any funds due or to become due Uni-Con for work on the School Project. Colonial's subrogation rights to funds flowing from the School Project are superior to Local 3's rights to those same funds as Local 3 is a judgment creditor in the instant action which relates to an entirely different construction project.

## INTRODUCTION AND FACTS

The within matter between the original parties Uni-Con, as Plaintiff, and Local 3, as Defendant, relates to a construction project dispute at the Dartmouth Campus of the University of Massachusetts ("Dartmouth Campus Project") that was resolved at arbitration in favor of Local 3. Uni-Con sought to vacate the arbitration decision through the present action, however, on May 9, 2006, this Court issued a Judgment in favor of Local 3 upholding the decision of the Arbitration Board.

Now, as a judgment creditor of Uni-Con, Local 3 seeks to attach certain funds allegedly due Uni-Con, as subcontractor, in the possession of Bacon Construction Co., Inc. ("Bacon"), as general contractor, for the New Bridgewater-Raynham Regional High School Project ("School District Project"). Local 3 has also named the Bridgewater-Raynham Regional School District ("School District"), the owner of the School District Project, as a Trustee that may be holding funds allegedly due Uni-Con pursuant to Uni-Con's subcontract with Bacon for the School District Project.

On or about September 15, 2006, Bacon declared Uni-Con to be in default of the subcontract for the School District Project. As of September 18, 2006, Uni-Con's subcontract with Bacon had a value of $1,010,167.51 for which Uni-Con had been paid $634,605.64, leaving a balance of $375,561.87.[1] On September 29, 2006, Bacon terminated the subcontract with Uni-Con. Colonial is the surety for Uni-Con on the School District Project and has, pursuant to Colonial's performance bond, taken over the completion of Uni-Con's subcontractual obligations. As discussed below, Colonial has

---

[1] It has yet to be determined what, if any, portion of the balance available under the subcontract, $375,561.87, was due Uni-Con as the time of Uni-Con's default and Colonial's takeover. However, since the default and termination of Uni-Con, Colonial has received proposals to perform Uni-Con's remaining work at the School District Project of $680,000.00 and $739,000.00, both well in excess of the funds remaining pursuant to the Uni-Con/Bacon subcontract.

2

priority subrogation rights to any funds due or to become due Uni-Con for work on the School District Project and said subrogation rights are superior to those asserted by Local 3. Additionally, as Uni-Con has willfully defaulted on its obligations pursuant to the subcontract with Bacon, Uni-Con has lost any rights it may have had to outstanding progress payments or retainage, and thus, Uni-Con is owed nothing.

**I.     Colonial Has A Superior Right To Unpaid Progress Payments and Retainage**

Colonial's subrogation rights as a surety performing the contractual obligation of its principal are superior to any claim Local 3 may have to funds due Uni-Con from Uni-Con's work on the School District Project. In National Shawmut Bank of Boston v. New Amsterdam Casualty Co., Inc., 411 F.2d 843 (1st Cir. 1969) the First Circuit sought to determine which of two entities had the superior right to funds due a defaulted contractor on a construction project. The contractor's surety claimed subrogation rights entitled it to the remaining funds from the project, while the bank which provided the contractor a line of credit secured by an assignment of all funds due from the project, claimed its status as a secured creditor under Article 9 of the Uniform Commercial Code ("U.C.C.") should prevail. National Shawmut, 411 F.2d at 844. After a thorough analysis of the surety's rights under the doctrine of equitable subrogation and the bank's rights under the U.C.C., the court held "upon default, the surety which is obligated to complete the work steps into the shoes of the [project owner] - not of the contractor which on default has forfeited its rights." National Shawmut, 411 F.2d at 848. The National Shawmut court further recognized the Supreme Judicial Court's holding that an assignee of a contract has a right to monies due the assignor "subject, however, to the dominant right of the owner to recoup the damages suffered by default." National Shawmut, 411 F.2d. at 848 (citing

3

American Bridge Co. of New York v. City of Boston, 202 Mass. 374 (1909)). The First Circuit held an owner has a superior right to funds not yet paid to a defaulted contractor, and the surety which has performed on behalf of a defaulted contractor steps into the owner's shoes, therefore, the surety succeeds, pursuant to the doctrine of equitable subrogation, to the owner's superior rights set forth in National Shawmut, 411 F.2d. at 845. Thus, the court determined the surety was entitled to priority over the bank in their competing claims to progress payments and retainage which had been earned, but not yet paid.

In a follow-on decision, American Fire & Casualty Co. v. First National City Bank Of New York, 411 F.2d 755 (1st Cir. 1969), the court again applied the doctrine of equitable subrogation, but in the context of a subcontractor that defaulted on a construction project. Similar to National Shawmut, the case presented a secured lender (bank) seeking priority to unpaid progress payments and retainage over the claim of a surety which completed the defaulted subcontractor's work. In determining the surety had a superior right to the unpaid progress payments and retainage, the court stated "after the default of the subcontractor, the surety succeeded to the rights of APRICO, the general contractor, whereas the Bank stands in the shoes of the subcontractor." American Fire, 411 F.2d at 758. In each of these cases the court found compelling that, absent the surety's performance, "the obligee on the bond, be he owner or prime contractor, would have been entitled to apply the funds against the cost of completion. It is the surety's performance which frees the funds, and, in our view, the surety is entitled to them." American Fire, 411 F.2d at 758.

Even if the defaulted contractor seeks bankruptcy protection, any outstanding contract payments held by the owner are not part of the bankruptcy estate, but rather belong to the surety completing the contractor's work. See In re: Modular Structures, Inc., 27 F.3d 72, 76 (3rd Cir. 1994) ("because [contractor] breached its contract with the [owner], none of the funds held by the [owner] were owing to [contractor] and thus could not properly be considered part of the bankruptcy estate"). The superiority of a performing surety's right of equitable subrogation is well established in American law. The Supreme Court held in Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962) that in a priority dispute between a bankruptcy trustee and a performing surety, both of which were seeking remaining contract funds held by the United States, as project owner, the retained funds were not part of the bankruptcy estate, but rather belonged to the owner, and thus, by right of subrogation, became property of the surety to the extent necessary to reimburse its payments to laborers and material suppliers.

Local 3 is a judgment creditor which can claim no greater right to funds allegedly held by Bacon or the School District than could Uni-Con, the judgment debtor. In effect, Local 3 may only stand in the shoes of Uni-Con when seeking funds from Bacon or the School District. Colonial, however, stands in the shoes of the general contractor, Bacon, which, as the First Circuit has said, is "entitled to apply the funds against the cost of completion." American Fire, 411 F.2d at 758. Colonial is clearly entitled to apply any outstanding progress payments or retainage to the completion of the project, because it is Colonial's "performance which frees the funds" and Colonial is entitled to those funds. American Fire, 411 F.2d at 758. Additionally, as Uni-Con has willfully defaulted on the subcontract with Bacon, Bacon is not obligated to pay Uni-Con anything. See

BloomSouth Flooring Corp. v. Boys' and Girls' Club of Taunton, 440 Mass. 618 (2003) (willful default by contractor terminated any right contractor had to further payment under contract). As stated above, Local 3 may only stand in the shoes of Uni-Con, which due to its default, is owed nothing. And even if Uni-Con were owed contract payments or retainage, Colonial possesses the superior right to same.

## CONCLUSION

WHEREFORE Colonial Surety Co. requests the Post-Judgment Motion For Approval Of Trustee Process And Request For Injunctive Relief of Local 3 be denied; and/or such other relief as the Court deems just and proper.

COLONIAL SURETY COMPANY
By its attorney,

Dated: October 10, 2006

/s/ Francis A. Shannon, III
Francis A. Shannon, III, Esq.
BBO # 560651
Shannon Law Associates, Inc.
One Bowdoin Square, 9th Floor
Boston, MA 02114
(617) 263-1313

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served a true copy of the above document upon the following parties by first class mail, postage prepaid, this 10th day of October, 2006:

Jonathan M. Conti, Esq.
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109

David M. Fleury, Esq.
Carmichael & Zajac, P.C.
170 High Street
Taunton, MA 02780

/s/ Francis A. Shannon, III
Francis A. Shannon, III, Esq.

1606:018:opptrust