UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNI-CON FLOORS, INC.,<br>　　　Plaintiff,<br><br>v.<br><br>BRICKLAYERS & ALLIED CRAFTSMEN<br>UNION, LOCAL 3 – EASTERN MASS.,<br>　　　Defendant,<br><br>and<br><br>COLONIAL SURETY CO.,<br>　　　Intervenor.<br>　　　　　　　　　　　　　　　　) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 05-10463 NG |

### COLONIAL'S OPPOSITION TO
### LOCAL 3'S MOTION TO ATTACH PERSONAL PROPERTY

NOW COMES the Intervenor Colonial Surety Co. ("Colonial") and opposes the

Motion To Attach Personal Property ("Motion") of the Defendant Bricklayer's & Allied

Craftsmen Union, Local 3 – Eastern Massachusetts ("Local 3"). As reasons therefore,

Colonial states as follows:

Pursuant to that certain General Indemnity Agreement ("Indemnity Agreement")

(Exhibit A), which was recorded in the Uniform Commercial Code ("UCC") filings

maintained by the Massachusetts Secretary of State, Colonial, as surety for Uni-Con

Floors, Inc. ("Uni-Con"), has a perfected security interest in the personal property

belonging to Uni-Con as Uni-Con has defaulted on two bonded public construction

projects for which Colonial has undertaken completion of same. Furthermore, Colonial is

informed certain materials located at Uni-Con's place of business, 2137 South Main

Street in Fall River, have been paid for by the general contractors for the defaulted projects and those materials rightfully belong to the project owners as "attic stock".

## INTRODUCTION AND FACTS

Colonial is in the business of issuing performance and payment bonds on behalf of contractors to secure the contractors' performance of contracts on public and private construction projects. Uni-Con, a flooring subcontractor, requested Colonial issue statutory payment and performance bonds for Massachusetts public construction projects. On August 25, 1998, and to induce Colonial to issue performance and payment bonds, the Defendants executed that certain Indemnity Agreement in favor of Colonial. Exhibit A. On April 17, 2003, Colonial recorded the Indemnity Agreement as an exhibit to a UCC Financing Statement filed with the Massachusetts Secretary of State. Exhibit B. Local 3 obtained a judgment against Uni-Con on May 9, 2006, however the amount of the judgment has not yet been determined. See Local 3's Motion For Entry Of Order Of Judgment. Court Docket, No. 40.

### New Bridgewater-Raynham Regional High School Project

On or about July 26, 2004, Uni-Con, as subcontractor, entered into a contract ("High School Subcontract") with Bacon Construction Co., Inc. ("Bacon"), as general contractor, wherein Uni-Con agreed to furnish the labor, materials and equipment necessary to perform certain tile work at the project known as the New Bridgewater-Raynham Regional High School Project in Bridgewater, Massachusetts ("High School Project"). Exhibit C, Nunziata Affid., ¶ 6.[1]  On August 31, 2004, Colonial, as surety,

---

[1] The original Affidavit Of Wayne T. Nunziata was filed in support of Colonial's Motion For Preliminary Injunction in that certain civil action Colonial Surety Company v. Uni-Con Floors, Inc. et al., United States District Court, District of Massachusetts, Case No. 07-CV-10121 WGY ("Colonial Action"). See Colonial Action at Court Docket, No. 2.

furnished a performance bond and a labor and materials payment bond on behalf of Uni-Con, as principal, for Bacon, as obligee, for the High School Project. Exhibit C, Nunziata Affid., ¶ 7. On September 15, 2006, Bacon declared Uni-Con in default of the High School Subcontract and notified Colonial of same. Exhibit C, Nunziata Affid., ¶ 8.

On September 29, 2006, Bacon terminated Uni-Con and made demand upon Colonial, pursuant to Colonial's performance bond, to complete Uni-Con's High School Subcontract. Exhibit C, Nunziata Affid., ¶ 9. Upon termination of Uni-Con's Subcontract, Colonial, as surety, assumed completion of Uni-Con's High School Subcontract and established a reserve to cover the anticipated costs of completing same as well as potentially paying suppliers which furnished materials to Uni-Con for use at the High School Project. Exhibit C, Nunziata Affid., ¶ 10. The completion of the High School Project remains ongoing.

### Williams Elementary School Project

On or about June 9, 2004, Uni-Con, as subcontractor, entered into a contract ("Williams School Subcontract") with Brait Builders Corporation ("Brait"), as general contractor, wherein Uni-Con agreed to furnish the labor, materials and equipment necessary to perform certain flooring work at the project known as the Williams Elementary School in Bridgewater, Massachusetts ("Williams School Project"). Exhibit C, Nunziata Affid., ¶ 12. On August 17, 2004, Colonial, as surety, furnished a performance bond and a labor and materials payment bond on behalf of Uni-Con, as principal, for Brait, as obligee, for the Williams School Project. Exhibit C, Nunziata Affid., ¶ 13.

On September 9, 2006, Brait declared Uni-Con in default of the Williams School Subcontract and notified Colonial of its obligation under the performance bond to cure Uni-Con's default on the Williams School Subcontract. Exhibit C, Nunziata Affid., ¶ 14. Colonial, as surety, promptly assumed completion of Uni-Con's Williams School Subcontract and established a reserve to cover anticipated costs. Exhibit C, Nunziata Affid., ¶ 15.

### The General Indemnity Agreement

Pursuant to the Indemnity Agreement, Uni-Con, as an Indemnitor, assigned, effective as of the date of each bond issued there under, all rights in connection with any bonded contract including all machinery, facilities, equipment, tools, materials or supplies which are used or required in connection with the bonded contracts. Exhibit A at ¶ 8. This provision applies to all materials ordered for a bonded contract, whether located at the site of the work, or elsewhere. The Indemnity Agreement further defines the principal, Uni-Con, as being in default with respect to a bonded contract if, *inter alia*, the principal breaches, abandons or repudiates the contract, or if the obligee or any beneficiary of a bond declares the principal to be in default. Exhibit A at ¶ 5.

Upon default, Colonial, as surety, may*, inter alia*, assume administration of any contract and arrange for completion thereof, take possession of the principal's equipment, materials, office, books and records, etc. as may be necessary for the completion of the contract. Exhibit A at ¶ 6 and Exhibit C, Nunziata Affid., ¶ 19. Colonial has set a reserve of $400,000.00 and has, to date, paid $381,597.97 in completing Uni-Con's work on the High School Project and the Williams School Project. Exhibit C, Nunziata Affid., ¶ 25. To date, the Indemnitors have not made any payments to Colonial (Exhibit C,

Nunziata Affid., ¶ 26) and as a result, Colonial commenced that certain civil action <u>Colonial Surety Company v. Uni-Con Floors, Inc. et al.</u>, United States District Court, District of Massachusetts, Case No. 07-CV-10121 WGY to recover the losses suffered on the two bonded projects.

## ARGUMENT

Colonial has previously perfected a security interest in the personal property belonging to Uni-Con. Pursuant to the Indemnity Agreement (Exhibit A), which was recorded in the UCC filings maintained by the Massachusetts Secretary of State (Exhibit B), Colonial perfected its security interest in the personal property of Uni-Con, which is superior to Local 3's interest a mere judgment holder. Furthermore, the materials located at Uni-Con's place of business, 2137 South Main Street in Fall River, have been paid for by the general contractors for the defaulted projects and those materials rightfully belong to the project owners as "attic stock" and therefore is not personal property of Uni-Con subject to an attachment.

**I.    Colonial's Perfected Security Interest In Uni-Con's Personal Property Predates Local 3's Judgment**

Colonial's security interest in Uni-Con's property is effective as of August 17, 2004 and August 31, 2004, the dates of the surety bonds for the Williams School Project and the High School Project, respectively. Exhibit A at ¶ 8. The Indemnity Agreement specifically provides as follows:

> 8. Assignment. As security for the performance of all of the provisions of this Agreement, each indemnitor hereby:
>
> A.    assigns, transfers, pledges and conveys to [Colonial] any and all claims of such indemnitor against, or any sums due and owing to such indemnitor by, [Uni-Con] and (effective as of

the date of each Bond) all rights in connection with any Contract, including but not limited to:

2. all machinery, facilities, equipment, tools, materials or supplies which are used or required in connection with the Contracts, including all materials ordered for the Contracts, whether located at the site of the work under such Contracts, or elsewhere;

Exhibit A at ¶ 8A(2).

"A security interest is defined as 'an interest in personal property or fixtures which secures payment or performance of an obligation.'" First International Bank v. Continental Casualy Co., No. 03-00122, 2004 Mass. Super. LEXIS 143, at *5 (Super. Ct., Hampden County, Apr. 16, 2004) (quoting Mass. Gen. L. c. 106, § 1-207(37)). Colonial's security interest in Uni-Con's personal property secures the performance of Uni-Con's bonded contracts. Through the Indemnity Agreement, Colonial has obtained a security interest in the personal property of Uni-Con, and Colonial has perfected its security interest by filing a financing statement with the Secretary of State. See Exhibit B.

Although Local 3 obtained a judgment against Uni-Con on May 9, 2006, such judgment is not perfected as a lien against particular property until a writ of attachment is issued by a court of competent jurisdiction. Smith Barney, Harris Upham & Company, Inc. v Connolly, 887 F. Supp. 337, 342 (D. Mass. 1994). Without an attachment for specific property, Local 3 is merely the holder of a judgment, and not a judgment lien holder. Id. at 342 (discussing "choateness" test for purpose of federal tax lien priority, which test requires lien specifically identify lienor, property subject to lien, and amount of lien). As Local 3 is presently seeking such a lien via the Motion To Attach Personal

Property, it has yet to perfect any interest in Uni-Con's personal property that it may have pursuant to its judgment against Uni-Con. Thus, Local 3 is not a judgment lien creditor[2].

Clearly, Colonial's perfected security interest in the personal property of Uni-Con predates, and therefore is superior to, Local 3's interest as only a mere holder of a judgment.

## II.    Certain Materials Stored At Uni-Con's Warehouse As Attic Stock Were Paid For By The General Contractors

Pursuant to the Uni-Con's Subcontracts for the Williams School Project and the High School Project, Uni-Con was to furnish additional flooring material that the schools would possess for any future repairs, etc.  In the parlance of the construction industry, such additional building material is known as "attic stock".  Colonial is informed, and therefore believes, that Uni-Con was storing attic stock for the Williams School Project and the High School Project at 2137 South Main Street, Fall River.  As Colonial is a performing surety for these two projects, Colonial is responsible to furnish the attic stock required by Uni-Con's Subcontracts.  Furthermore, the general contractors for the School Projects have already paid, on behalf of Uni-Con, the suppliers of the attic stock.  As such, the attic stock located at Uni-Con's place of business is not Uni-Con's property, and thus rightfully belongs to the general contractors until the attic stock is turned over to the owners of the two School Projects.  Therefore, the attic stock located at 2137 South Main Street, Fall River is not personal property of Uni-Con, and thus is not subject to attachment by Uni-Con's creditors.

---

[2] "A 'judgment lien creditor' is defined in the Treasury Regulations as 'a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or a certain sum of money." Smith Barney, 887 F. Supp. at 342 (quoting Treas. Reg. § 301.6323(h)-1(g) (1976)).

**CONCLUSION**

WHEREFORE, Colonial Surety Co. requests Local 3's Motion To Attach Personal Property be denied; and/or such other relief as the Court deems just and proper.

COLONIAL SURETY CO.
By its attorney,

Dated: February 7, 2007                     /s/ Francis A. Shannon, III
                                            Francis A. Shannon, III, Esq.
                                            BBO # 560651
                                            Shannon Law Associates, Inc.
                                            One Bowdoin Square, 9th Floor
                                            Boston, MA 02114
                                            (617) 263-1313

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I served a true copy of the above document upon the following parties by electronically filing through this Court's CM/ECF filing system and by first class mail, postage prepaid, this 7th day of February, 2007:

Jonathan M. Conti, Esq.                  David M. Fleury, Esq.
Feinberg, Campbell & Zack, P.C.          Carmichael & Zajac, P.C.
177 Milk Street                          170 High Street
Boston, MA 02109                         Taunton, MA 02780


                                            /s/ Francis A. Shannon, III
                                            Francis A. Shannon, III, Esq.

1606:018:oppattach

TONI VUOLO ...........COMPANY                              PAGE   08

Harrisburg, Pennsylvania

Administrative Office: 50 Chestnut Ridge Road, Montvale, New Jersey 07645

# GENERAL INDEMNITY AGREEMENT

THIS AGREEMENT of indemnity, made and entered into this __25th__ day of __August__ , 19 __98__ , is executed by the under-signed (jointly and severally, including the Principal as defined below, "Indemnitor") for the purpose of indemnifying COLONIAL SURETY COM-PANY (the "Company") and any other entity who may act as Surety, as hereinafter defined, in connection with any Bonds written on behalf of: __Uni-Con Floors, Inc.__
at: __P.O. Box 267, 2137A S. Main Street Fall River, MA 02724-0267__

(hereinafter referred to as the "Principal.")                     (address)

NOW THEREFORE, in consideration of and in connection with the Company's execution or procurement at the request of Indemnitor of the suretyship for which application is now pending, or which may be hereafter applied for, or other suretyship in lieu thereof or in lieu of suretyship now outstanding, or in connection therewith, Indemnitor and the Company hereby undertake and agree:

**1.   DEFINITIONS..**   The following terms, when capitalized in this Agreement have the meanings set forth herein:
**Bond** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal, al-teration, modification or extension of said obligation.
**Principal** - The person or entity set forth above or any one of combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.
**Surety** - COLONIAL SURETY COMPANY, its reinsurers, and any other person or entity which the Company may procure to act as surety or co-surety on any Bond or any other person or entity who executes any Bond at the Company's request.
**Contract** - Any agreement of or other undertaking by Principal, the performance of which is bonded by Surety and all extensions, modifications and renewals thereof, whether made before or after the date of this Agreement.

**2.   PREMIUM.**   Indemnitor will pay, or cause to be paid, to the Company, as and when each and every Bond is executed, the premium therefore, calculated on contract price in accordance with the regular scheduled rates of the Company then in force, and annually thereafter (except when the initial premium is scheduled as term premium) shall pay or cause to be paid to the Company the annual premium therefore (and for any and all renewals or extensions thereof) in accordance with such rates until Indemnitor shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from suretyship. All premium shall be considered earned when due. In the event of contract overruns, Indemnitor shall pay to the Company, upon audit, any additional premium which is due to the Company. It is understood and agreed that all premium is FULLY EARNED UPON issuance of the bond AND IS NOT REFUNDABLE. Non-Payment of premium obligation by Principal (Indemnitor) constitutes default of its obligations as outlined in this agreement.

**3.   INDEMNITY.**   Indemnitor and his successors agree to perform all the conditions of each Bond and to indemnify and save harmless Surety from and against any and all (i) demands, liabilities, loss, costs, damages or expenses of whatever nature or kind, including fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the dis-charge of Bonds and in attempting to recover losses or expenses from Indemnitors or third parties, whether or not Surety shall have paid out any or all of such sums, (ii) amounts sufficient to discharge any claim made against Surety on any Bond, which amounts may be used by Surety to pay such claim, or may be held by Surety as collateral security against any loss on any Bond, and (iii) any premiums due on Bonds issued by the Sure-ty on behalf of the Principal (the "Indemnity").

**4.   RIGHTS OF SURETY.**   In furtherance of the Indemnity hereunder:
    A.   Surety shall have the right in its sole discretion to determine whether any claims shall be paid, compromised, de-fended, prosecuted or appealed.
    B.   Surety shall have the right to incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigative, accounting, engineering and legal services, and Surety's good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon Indemnitor.
    C.   Surety shall have the foregoing rights, irrespective of the fact that Indemnitor may have assumed, or offered to assume, the defense of Surety upon such claim.
    D.   In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by an officer of Sure-ty, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the lia-bility hereunder of Indemnitor.
    E.   Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. Surety may recover from Indemnitor its expenses and attorneys' fees incurred in prosecuting or defending any action arising out of or relating to this Agreement.

**5.   DEFAULT.**   Principal shall be in Default with respect to a Contract if any of the following occur:
    A.   Principal breaches, abandons or repudiates any Contract.
    B.   Any beneficiary of a Bond or obligee of a Contract declares Principal to be in default.
    C.   Principal fails to pay for any labor or materials when such payment is due.
    D.   Principal diverts any Contract funds from one Contract to another, prior to the complete discharge of Surety.
    E.   Principal or any Indemnitor breaches any provision of this Agreement.
    F.   Principal or any Indemnitor becomes the subject of any Agreement or proceedings, voluntary or involuntary, of liquida-tion, insolvency, bankruptcy, reorganization, receivership, trusteeship, or assignment for creditors or actually becomes insol-vent.
    G.   Principal, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from jus-tice or disappears and cannot be located without costly or extraordinary methods.

**6.   REMEDIES UPON DEFAULT.**   In the event of Default, as defined above, Surety may at its option and sole discretion take any or all of the fol-lowing actions:
    A.   assume the administration of any Contract and arrange for its completion;
    B.   take possession of and operate and use the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract without liability for any rental for or liability for losses arising from such use;
    C.   take possession of and operate and use the office equipment, books and records of Principal as are necessary for completion of any Contract;
    D.   loan such funds or guarantee a loan for such funds as Surety shall deem necessary for the completion of any Contract and for the discharge of Surety in connection with any Contract. Repayment of such loan shall be covered by the Indemnity hereunder;
    E.   file an immediate suit to enforce any or all of the provisions of this Agreement.

**7.   COLLATERAL SECURITY.**   If a claim is made against Surety, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, Indemnitor shall deposit with Surety cash or other property acceptable to Surety, as collateral security, to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral security shall be in such amount as Sure-ty on its sole and absolute discretion deems appropriate. Such collateral may be held by Surety until it has received evidence of its complete dis-charge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense and attorneys' fees.

**8.  ASSIGNMENT.**  As security for the performance of all of the provisions of this Agreement, each Indemnitor hereby:

A.  assigns, transfers, pledges and conveys to Surety any and all claims of such Indemnitor against, or any sums due and owing to such Indemnitor by, the Principal and (effective as of the date of each Bond) all rights in connection with any Contract, including but not limited to:

1.  all subcontracts made in connection with a Contract and such subcontractors' surety bonds;

2.  all machinery, facilities, equipment, tools, materials or supplies which are used or required in connection with the Contracts, including all materials ordered for the Contracts, whether located at the site of the work under such Contracts, or elsewhere;

3.  all accounts receivable, including any and all sums due or which may thereafter become due under a Contract and all sums due or to become due on all other contracts, bonded or unbonded, in which any Indemnitor has an interest; and

4.  all rights arising out of insurance policies held by any Indemnitor, or of which any Indemnitor is a beneficiary; and

B.  agrees that all monies earned by Principal under any Contract are trust funds, whether in possession of Principal or otherwise, for the benefit of and payment of Principal's obligations for labor, materials and supplies furnished in performance of such Contract for which Surety would or could be liable under any Bond for such Contract.

**9.  POWER OF ATTORNEY.**  The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Company or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents, instruments or papers, including but not limited to vouchers, releases, bills of sale, financing statements and schedules thereto and the endorsements of checks or other instruments representing payment of Contract monies, and any other document deemed necessary or appropriate by Surety to give full effect, not only to the intent and meaning of the within assignment, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. Indemnitor hereby ratifies and affirms all acts and actions taken and done by the Surety or its designee as attorney-in-fact. This power of attorney is irrevocable and is coupled with an interest and shall survive the subsequent disability or incapacity of any or all the Undersigned.

**10.  GENERAL PROVISIONS.**

A.  The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal.

B.  Indemnitor will, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof.

C.  Indemnitor(s) warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

D.  Indemnitor waives notice of any Default, the making of a claim against Surety, Surety's loaning funds to Principal or any defense which could arise by the granting by Surety of any indulgence to the Principal.

E.  Indemnitor agrees to give to Surety prompt notice of any facts which might give rise to any claims or suit against Surety upon any Bond.

F.  Surety shall have the right, at its option and in its sole discretion, to decline execution of any Bond, including Performance and Payment Bonds when it has furnished a Bid Bond.

G.  Surety may consent to any changes or alterations in a Contract, without affecting the liability hereunder of Indemnitor.

H.  Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration.

I.  Until Surety shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as hereunder provided, Surety shall have the right to free access to the books, records and accounts of Indemnitor for the purpose of examining and copying them. Undersigned hereby authorize third parties, including but not limited to depositaries of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms or entities as it may deem appropriate.

J.  Indemnitor waives all right to claim any property, including homestead, as exempt from legal process in any action hereunder.

K.  If the execution hereof by any Indemnitor may be defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other Indemnitor. Invalidity of all or part of any provision hereof by reason of the law of any jurisdiction or for any other reason shall not render the remainder of this Agreement invalid.

L.  The Surety may, at its option, file or record this Agreement or any other document executed by any or all Indemnitors, individually or jointly, in connection with application, issuance or execution of any Bond coming within the scope of this instrument, as a security agreement or as a part of a financing statement or as a notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of Indemnitor under this Agreement.

M.  Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

N.  Indemnitor waives any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to Indemnitor's request and in reliance on Indemnitor's promise to execute this instrument.

O.  This Agreement (including this section) may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing by each party against whom enforcement is sought.

P.  In the event that any Indemnitor shall (i) fail to execute this instrument; or (ii) become insolvent; or (iii) fail to be bound hereby for any reason, the remaining Indemnitors shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

Q.  Repeated actions may be brought under this Agreement as breaches thereof may occur, without any former action operating as a bar to any subsequent action.

R.  Wherever used in this instrument the plural shall include the singular and the singular shall include the plural, as the circumstances require.

S.  The liability of Indemnitor hereunder shall not be affected by the failure of the Principal to sign any Bond or by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or the return or exchange of any collateral, that may have been obtained.

**11.  TERMINATION.**  This Agreement is a continuing obligation of Indemnitor unless terminated by written notice to Surety as hereinafter provided, and such termination as to an Indemnitor shall in no way affect the obligation of any other Indemnitor who has not given such notice. The liability of Indemnitor hereunder as to future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known or learned by Surety about the Principal, even though such facts materially increase the risk beyond that which Indemnitor might intend to assume. Surety may have reason to believe such facts are unknown to Indemnitor, and Surety may have reasonable opportunity to communicate such facts to Indemnitor and the Undersigned hereby waive notice of such facts. In order to terminate liability as to future Bonds of Principal, an Indemnitor must:

A.  give written notice by certified or registered mail to Surety at its Administrative Office, Montvale, New Jersey, of such termination; and

B.  state in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Indemnitor's liability to future Bonds.

After the effective date of such termination, any Indemnitor who was given notice shall nonetheless be liable hereunder for:

A.  Bonds executed or authorized prior to such date, and renewals, substitutions and extensions thereof; and

B.  Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such date and renewals, substitutions and extensions thereof; and

C.  any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such date, and renewals, substitutions and extensions thereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

04/17/2003  13:06    2014761240            TONI VUOLO                    PAGE  10

ATTEST OR WITNESS                    PRINCIPAL

                                     Uni-Con Floors, Inc.
                                     _____
                                          (Full Name & Address of Principal)

_____            P.O. Box 267, 2137A, South Main Street Fall River
Lori Moniz                           MA 02724-0267
                                     By Katherine L. Hebert, President
                                     _____ (SEAL)

ATTEST OR WITNESS                    INDEMNITORS
                                     _____
                                          (Full Name & Address of Indemnitor)
                                     _____
_____            _____
                                     By _____ (SEAL)

Signature Katherine L. Hebert        Signature Scott P. Hebert
Name   Katherine L. Hebert           Name   Scott Hebert

  6 Hebert Way, Westport, MA           6 Hebert Way, Westport, MA
Residence Address                    Residence Address

  2137A South Main St., Fall River, MA    2137A South Main St. Fall River, MA
Business Address                     Business Address

Signature John A. Pacheco            Signature Jamie K. Pacheco
Name   John A. Pacheco               Name   Jamie K. Pacheco

  5 Granada Dr., Westport, MA          5 Granada Dr., Westport, MA
Residence Address                    Residence Address

  2137A South Main St., Fall River, MA    2137A South Main St., Fall River, MA
Business Address                     Business Address

Signature Kristine Weizman           Signature IN3'I 'n/c
Name   Kristine Weizman              Name  Avi Weizman

  5 Granada Dr., Westport, MA          5 Granada Dr., Westport, MA
Residence Address                    Residence Address

  2137A South Main St., Fall River, MA    2137A South Main St., Fall River, MA
Business Address                     Business Address

COLONIAL SURETY COMPANY
     (Surety)

Lisa Picco

                                     By Sherryanne Di Pirro        (SEAL)

3

**For Acknowledgement of Principal's Signature**

STATE OF __MA__

COUNTY OF __Bristol_____    ss.:

    On this ___25th___ day of ___August_____, in the year 19 __98__, before me personally comes __Katherine L. Hebert_____, to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____ Westport _____ that he is the __President__ of __Uni-Con Floors, Inc.__ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

My commission expires December 20, 2002 _____

                                         Notary Public / Guy Massa
                                         (Seal and Address)

STATE OF _____

COUNTY OF _____    ss.:

    On this _____ day of _____, 19_____, before me personally came _____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

                                         Notary Public
                                         (Seal and Address)

**For Acknowledgement of Individual Indemnitor's Signatures**

STATE OF _____

COUNTY OF _____    ss.:

    On this _____ day of _____, in the year 19 _____, before me personally comes _____, to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____, that he is the _____ of _____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

                                         Notary Public
                                         (Seal and Address)

STATE OF ___MA_____

COUNTY OF ___Bristol_____    ss.:

    On this __25th__ day of __August_____, 19 __98__, before me personally came __Katherine L. Hebert_____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002 _____

                                    Notary Public   Guy Massa
                                       (Seal and Address)

STATE OF ___MA_____

COUNTY OF ___Bristol_____    ss.:

    On this __25th__ day of __August_____, 19 __98__, before me personally came __Scott Hebert_____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002 _____

                                    Notary Public   Guy Massa
                                        (Seal and Address)

*CORPORATE ACKNOWLEDGEMENT*    *INDIVIDUAL OR PARTNERSHIP*    *CORPORATE ACKNOWLEDGEMENT*    *INDIVIDUAL OR PARTNERSHIP*    *INDIVIDUAL OR PARTNERSHIP*

**For Acknowledgement of Principal's Signature**

**CORPORATE ACKNOWLEDGEMENT**

STATE OF _____

COUNTY OF _____ ss.:

On this _____ day of _____, in the year 19_____, before me personally comes _____, to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____, that he is the _____ of _____ the corporation described in and which executed the foregoing instrument;  that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and  that he signed his name thereto by like order.

_____
Notary Public
(Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF _____

COUNTY OF _____ ss.:

On this _____ day of _____. 19_____, before me personally came _____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument,  and that he thereupon acknowledged to me that he executed the same.

_____
Notary Public
(Seal and Address)

**For Acknowledgement of Individual Indemnitor's Signatures**

**CORPORATE ACKNOWLEDGEMENT**

STATE OF _____

COUNTY OF _____ ss.:

On this _____ day of _____, in the year 19_____, before me personally comes _____, to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____, that he is the _____ of _____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
Notary Public
(Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF ___MA_____

COUNTY OF ___Bristol_____ ss.:

On this ___25th___ day of ___August_____, 19__98__, before me personally came __John A. Pacheco_____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument,  and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002

_____
Notary Public        Guy Massa
(Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF ___MA_____

COUNTY OF ___Bristol_____ ss.:

On this ___25th___ day of ___August_____, 19__98__, before me personally came __Jamie K. Pacheco_____, to me known and known to me to be the person(s) (or member of the firm) described in and who executed the foregoing instrument,  and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002

_____
Notary Public        Guy Massa
(Seal and Address)

**For Acknowledgement of Principal's Signature**

CORPORATE ACKNOWLEDGEMENT

STATE OF _____

COUNTY OF _____  ss.:

On this _____ day of _____, in the year 19_____, before me personally

comes _____, to me known, who,
being by me duly sworn, deposes and says that he resides in the City of_____, _____ that he is the
_____ of _____
the corporation described in and which executed the foregoing instrument;  that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Direct-
ors of said corporation, and  that he signed his name thereto by like order.

_____
Notary Public
(Seal and Address)

INDIVIDUAL OR PARTNERSHIP

STATE OF _____

COUNTY OF _____  ss.:

On this _____ day of _____,19_____, before me personally

came _____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

_____
Notary Public
(Seal and Address)

**For Acknowledgement of Individual Indemnitor's Signatures**

CORPORATE ACKNOWLEDGEMENT

STATE OF _____

COUNTY OF _____  ss.:

On this _____ day of _____, in the year 19_____, before me personally

comes _____, to me known, who,
being by me duly sworn, deposes and says that he resides in the City of_____that he is the
_____ of _____
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of
said corporation, and that he signed his name thereto by like order.

_____
Notary Public
(Seal and Address)

INDIVIDUAL OR PARTNERSHIP

STATE OF __MA_____

COUNTY OF __Bristol_____  ss.:

On this __25th____ day of __August_____, 19__98___, before me personally

came __Kristine Weizman_____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

My commission expires December 20, 2002

_____
Notary Public   Guy Massa
(Seal and Address)

STATE OF __MA_____

COUNTY OF __Bristol_____  ss.:

On this __25th____ day of __August_____, 19__98___, before me personally

came __Avi Weizman_____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

My commission expires December 20, 2002

_____
Notary Public   Guy Massa
(Seal and Address)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Toni Vuolo     201-573-8788 ext. 11

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Colonial Surety Company
50 Chestnut Ridge Road, Suite 108
Montvale, NJ 07645

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Uni-Con Floors, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 267, 2137A S. Main Street | Fall River | MA | 02724-0267 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | MA | ☑ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Hebert | Katherine | L. | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6 Hebert Way | Westport | MA | 02790 | USA |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Colonial Surety Company | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 50 Chestnut Ridge Road | Montvale | NJ | 07645 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Debtor's rights, title and interest in and to the collateral described in "General
Indemnity Agreement of 08/25/98" attached hereto as Exhibit "A" including (1) all
machinery, inventory and equipment, and proceeds and products thereof, including
insurance proceeds now owned or hereafter acquired by Debtor; and (2) all accounts and
contract rights.

**5. ALTERNATIVE DESIGNATION** [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable]  **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

52259-FID

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | 9a. ORGANIZATION'S NAME |
|---|---|
| OR | Uni-Con Floors, Inc. |
| | 9b. INDIVIDUAL'S LAST NAME / FIRST NAME / MIDDLE NAME,SUFFIX |

10. MISCELLANEOUS:

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | Hebert | Scott | | | |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 6 Hebert Way | Westport | MA | 02790 | USA |
| 11d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☑ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

| | 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust  or  ☐ Trustee acting with respect to property held in trust  or  ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

04/17/2003  13:06   2014761240          TONI VUOLO              PAGE  04

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | Uni-Con Floors, Inc. |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S LAST NAME Pacheco | FIRST NAME John | MIDDLE NAME A. | | SUFFIX |
| 11c. MAILING ADDRESS 5 Granada Dr. | CITY Westport | STATE MA | POSTAL CODE 02790 | COUNTRY USA |
| 11d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any ☑NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | Uni-Con Floors, Inc. |

OR

| **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |
|---|---|---|
| | | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (11a or 11b) - do not abbreviate or combine names

| **11a. ORGANIZATION'S NAME** |
|---|
| |

OR

| **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| Pacheco | Jamie | K. | |

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 5 Granada Dr. | Westport | MA | 02790 | USA |

| **11d. TAX ID #. SSN OR EIN** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID #, if any** |
|---|---|---|---|---|
| | | | | ☑ NONE |

**12.** ☐ **ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S  NAME** - Insert only one name (12a or 12b)

| **12a. ORGANIZATION'S NAME** |
|---|
| |

OR

| **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedant's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR | Uni-Con Floors, Inc.

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

Weizman | Kristine

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

5 Granada Dr. | Westport | MA | 02790 | USA

11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | ☑ NONE

12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| Uni-Con Floors, Inc. | | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| Weizman | Avi | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5 Granada Dr. | Westport | MA | 02790 | USA |

| 11d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)

04/17/2003  13:06   2014761240   TONI VUOLO   PAGE  08

THE COLONY COMPANY
Harrisburg, Pennsylvania

Administrative Office: 50 Chestnut Ridge Road, Montvale, New Jersey 07645

# GENERAL INDEMNITY AGREEMENT

THIS AGREEMENT of indemnity, made and entered into this _25th_ day of ___August___ , 19 _98_ , is executed by the under- signed (jointly and severally, including the Principal as defined below, "Indemnitor") for the purpose of indemnifying COLONIAL SURETY COM- PANY (the "Company") and any other entity who may act as Surety, as hereinafter defined, in connection with any Bonds written on behalf of: _Uni-Con Floors, Inc._

_P.O. Box 267, 2137A S. Main Street Fall River, MA 02724-0267_

of: _____

(hereinafter referred to as the "Principal.")          (address)

NOW THEREFORE, in consideration of and in connection with the Company's execution or procurement at the request of Indemnitor of the suretyship for which application is now pending, or which may be hereafter applied for, or other suretyship in lieu thereof or in lieu of suretyship now outstanding, or in connection therewith, Indemnitor and the Company hereby undertake and agree:

**1. DEFINITIONS..** The following terms, when capitalized in this Agreement have the meanings set forth herein:
**Bond** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal, al- teration, modification or extension of said obligation.
**Principal** - The person or entity set forth above or any one of combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.
**Surety** - COLONIAL SURETY COMPANY, its reinsurers, and any other person or entity which the Company may procure to act as surety or co-surety on any Bond or any other person or entity who executes any Bond at the Company's request.
**Contract** - Any agreement of or other undertaking by Principal, the performance of which is bonded by Surety and all extensions, modifications and renewals thereof, whether made before or after the date of this Agreement.

**2. PREMIUM.** Indemnitor will pay, or cause to be paid, to the Company, as and when each and every Bond is executed, the premium therefore, calculated on contract price in accordance with the regular scheduled rates of the Company than in force, and annually thereafter (except when the initial premium is scheduled as term premium) shall pay or cause to be paid to the Company the annual premium therefore (and for any and all renewals or extensions thereof) in accordance with such rates until Indemnitor shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from suretyship. All premium shall be considered earned when due. In the event of contract overruns, Indemnitor shall pay to the Company, upon audit, any additional premium which is due to the Company. It is understood and agreed that all premium is FULLY EARNED UPON issuance of the bond AND IS NOT REFUNDABLE. Non-Payment of premium obligation by Principal (Indemnitor) constitutes default of its obligations as outlined in this agreement.

**3. INDEMNITY.** Indemnitor and his successors agree to perform all the conditions of each Bond and to indemnify and save harmless Surety from and against any and all (i) demands, liabilities, loss, costs, damages or expenses of whatever nature or kind, including fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the dis- charge of Bonds and in attempting to recover losses or expenses from Indemnitors or third parties, whether or not Surety shall have paid out any or all of such sums, (ii) amounts sufficient to discharge any claim made against Surety on any Bond, which amounts may be used by Surety to pay such claim, or may be held by Surety as collateral security against any loss on any Bond, and (iii) any premiums due on Bonds issued by the Sure- ty on behalf of the Principal (the "Indemnity").

**4. RIGHTS OF SURETY.** In furtherance of the indemnity hereunder:
    A.  Surety shall have the right in its sole discretion to determine whether any claims shall be paid, compromised, de- fended, prosecuted or appealed.
    B.  Surety shall have the right to incur such expenses in handling a claim as it deems necessary or advisable, including but not limited to the expense for investigative, accounting, engineering and legal services, and Surety's good faith determination as to the necessity or advisability of any such expense shall be final and conclusive upon Indemnitor.
    C.  Surety shall have the foregoing rights, irrespective of the fact that Indemnitor may have assumed, or offered to assume, the defense of Surety upon such claim.
    D.  In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by an officer of Sure- ty, or the vouchers or other evidence of disbursement by Surety, shall be _prima facie_ evidence of the fact and extent of the lia- bility hereunder of Indemnitor.
    E.  Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. Surety may recover from Indemnitor its expenses and attorneys' fees incurred in prosecuting or defending any action arising out of or relating to this Agreement.

**5. DEFAULT.** Principal shall be in Default with respect to a Contract if any of the following occur:
    A.  Principal breaches, abandons or repudiates any Contract.
    B.  Any beneficiary of a Bond or obligee of a Contract declares Principal to be in default.
    C.  Principal fails to pay for any labor or materials when such payment is due.
    D.  Principal diverts any Contract funds from one Contract to another, prior to the complete discharge of Surety.
    E.  Principal or any Indemnitor breaches any provision of this Agreement.
    F.  Principal or any Indemnitor becomes the subject of any Agreement or proceedings, voluntary or involuntary, of liquida- tion, insolvency, bankruptcy, reorganization, receivership, trusteeship, or assignment for creditors or actually becomes insol- vent.
    G.  Principal, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from jus- tice or disappears and cannot be located without costly or extraordinary methods.

**6. REMEDIES UPON DEFAULT.** In the event of Default, as defined above, Surety may at its option and sole discretion take any or all of the fol- lowing actions:
    A.  assume the administration of any Contract and arrange for its completion;
    B.  take possession of and operate and use the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract without liability for any rental for or liability for losses arising from such use;
    C.  take possession of and operate and use the office equipment, books and records of Principal as are necessary for completion of any Contract;
    D.  loan such funds or guarantee a loan for such funds as Surety shall deem necessary for the completion of any Contract and for the discharge of Surety in connection with any Contract. Repayment of such loan shall be covered by the Indemnity hereunder;
    E.  file an immediate suit to enforce any or all of the provisions of this Agreement.

**7. COLLATERAL SECURITY.** If a claim is made against Surety, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, Indemnitor shall deposit with Surety cash or other property acceptable to Surety, as collateral security, to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral security shall be in such amount as Sure- ty in its sole and absolute discretion deems appropriate. Such collateral may be held by Surety until it has received evidence of its complete dis- charge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense and attorneys' fees.

**8. ASSIGNMENT.** As security for the performance of all of the provisions of this Agreement, each Indemnitor hereby:

    A.   assigns, transfers, pledges and conveys to Surety any and all claims of such Indemnitor against, or any sums due and owing to such Indemnitor by, the Principal and (effective as of the date of each Bond) all rights in connection with any Contract, including but not limited to:

        1.   all subcontracts made in connection with a Contract and such subcontractors' surety bonds;

        2.   all machinery, facilities, equipment, tools, materials or supplies which are used or required in connection with the Contracts, including all materials ordered for the Contracts, whether located at the site of the work under such Contracts, or elsewhere;

        3.   all accounts receivable, including any and all sums due or which may thereafter become due under a Contract and all sums due or to become due on all other contracts, bonded or unbonded, in which any Indemnitor has an interest; and

        4.   all rights arising out of insurance policies held by any Indemnitor, or of which any Indemnitor is a beneficiary; and

    B.   agrees that all monies earned by Principal under any Contract are trust funds, whether in possession of Principal or otherwise, for the benefit of and payment of Principal's obligations for labor, materials and supplies furnished in performance of such Contract for which Surety would or could be liable under any Bond for such Contract.

**9. POWER OF ATTORNEY.** The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Company or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents, instruments or papers, including but not limited to vouchers, releases, bills of sale, financing statements and schedules thereto and the endorsements of checks or other instruments representing payment of Contract monies, and any other document deemed necessary or appropriate by Surety to give full effect, not only to the intent and meaning of the within assignment, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. Indemnitor hereby ratifies and affirms all acts and actions taken and done by the Surety or its designee as attorney-in-fact. This power of attorney is irrevocable and is coupled with an interest and shall survive the subsequent disability or incapacity of any or all the Undersigned.

**10. GENERAL PROVISIONS.**

    A.   The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal.

    B.   Indemnitor will, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof.

    C.   Indemnitor(s) warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

    D.   Indemnitor waives notice of any Default, the making of a claim against Surety, Surety's loaning funds to Principal or any defense which could arise by the granting by Surety of any indulgence to the Principal.

    E.   Indemnitor agrees to give to Surety prompt notice of any facts which might give rise to any claims or suit against Surety upon any Bond.

    F.   Surety shall have the right, at its option and in its sole discretion, to decline execution of any Bond, including Performance and Payment Bonds when it has furnished a Bid Bond.

    G.   Surety may consent to any changes or alterations in a Contract, without affecting the liability hereunder of Indemnitor.

    H.   Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration.

    I.   Until Surety shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as hereunder provided, Surety shall have the right to free access to the books, records and accounts of Indemnitor for the purpose of examining and copying them. Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms or entities as it may deem appropriate.

    J.   Indemnitor waives all right to claim any property, including homestead, as exempt from legal process in any action hereunder.

    K.   If the execution hereof by any Indemnitor may be defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other Indemnitor. Invalidity of all or part of any provision hereof by reason of the law of any jurisdiction or for any other reason shall not render the remainder of this Agreement invalid.

    L.   The Surety may, at its option, file or record this Agreement or any other document executed by any or all Indemnitors, individually or jointly, in connection with application, issuance or execution of any Bond coming within the scope of this instrument, as a security agreement or as a part of a financing statement or as a notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of Indemnitor under this Agreement.

    M.   Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

    N.   Indemnitor waives any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to Indemnitor's request and in reliance on Indemnitor's promise to execute this instrument.

    O.   This Agreement (including this section) may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing by each party against whom enforcement is sought.

    P.   In the event that any Indemnitor shall (i) fail to execute this instrument; or (ii) become insolvent; or (iii) fail to be bound hereby for any reason, the remaining Indemnitors shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

    Q.   Repeated actions may be brought under this Agreement as breaches thereof may occur, without any former action operating as a bar to any subsequent action.

    R.   Wherever used in this instrument the plural shall include the singular and the singular shall include the plural, as the circumstances require.

    S.   The liability of Indemnitor hereunder shall not be affected by the failure of the Principal to sign any Bond or by any claim that other indemnity or security was to have been obtained, nor by the release of any Indemnity or the return or exchange of any collateral, that may have been obtained.

**11. TERMINATION.** This Agreement is a continuing obligation of Indemnitor unless terminated by written notice to Surety as hereinafter provided, and such termination as to an Indemnitor shall in no way affect the obligation of any other Indemnitor who has not given such notice. The liability of Indemnitor hereunder as to future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known or learned by Surety about the Principal, even though such facts materially increase the risk beyond that which Indemnitor might intend to assume. Surety may have reason to believe such facts are unknown to Indemnitor, and Surety may have reasonable opportunity to communicate such facts to Indemnitor and the Undersigned hereby waive notice of such facts. In order to terminate liability as to future Bonds of Principal, an Indemnitor must:

    A.   give written notice by certified or registered mail to Surety at its Administrative Office, Montvale, New Jersey, of such termination; and

    B.   state in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Indemnitor's liability to future Bonds.

After the effective date of such termination, any Indemnitor who was given notice shall nonetheless be liable hereunder for:

    A.   Bonds executed or authorized prior to such date, and renewals, substitutions and extensions thereof; and

    B.   Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such date and renewals, substitutions and extensions thereof; and

    C.   any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such date, and renewals, substitutions and extensions thereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

04/17/2003  13:06    2014761240    PRINCIPAL    TONI VUOLO    PAGE  10

**ATTEST OR WITNESS**

_Toni Morais_
Lori Moniz

**ATTEST OR WITNESS**

Uni-Con Floors, Inc.
(Full Name & Address of Principal)

P.O. Box 267, 2137A, South Main Street Fall River
MA 02724-0267
_Katherine L. Hebert_
By Katherine L. Hebert, President _____ (SEAL)

**INDEMNITORS**

_____
(Full Name & Address of Indemnitor)

_____

By _____ (SEAL)

Signature _Katherine L. Hebert_
Name  Katherine L. Hebert

  6 Hebert Way, Westport, MA
Residence Address

  2137A South Main St., Fall River, MA
Business Address

Signature _John A. Pacheco_
Name  John A. Pacheco

  5 Granada Dr., Westport, MA
Residence Address

  2137A South Main St., Fall River, MA
Business Address

Signature _Kristine Weizman_
Name  Kristine Weizman

  5 Granada Dr., Westport, MA
Residence Address

  2137A South Main St., Fall River, MA
Business Address

Signature _Scott P. Hebert_
Name  Scott Hebert

  6 Hebert Way, Westport, MA
Residence Address

  2137A South Main St. Fall River, MA
Business Address

Signature _Jamie K. Pacheco_
Name  Jamie K. Pacheco

  5 Granada Dr., Westport, MA
Residence Address

  2137A South Main St., Fall River, MA
Business Address

Signature _IN3'1  '0/c_
Name  Avi Weizman

  5 Granada Dr., Westport, MA
Residence Address

  2137A South Main St., Fall River, MA
Business Address

**COLONIAL SURETY COMPANY**
(Surety)

_Lisa Pico_

By _Sherryanne De Pirro_ _____ (SEAL)

3

**For Acknowledgement of Principal's Signature**

STATE OF __ MA _____

COUNTY OF _ Bristol _____    ss.:

On this _____ 25th _____ day of _____ August _____, in the year 19 _98_, before me personally

comes ___ Katherine L. Hebert _____, to me known, who,

being by me duly sworn, deposes and says that he resides in the City of _____ Westport _____, that he is the

___ President _____ of _ Uni-Con Floors, Inc. _____

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

My commission expires December 20, 2002 _____

Notary Public                Guy Massa
(Seal and Address)

STATE OF _____

COUNTY OF _____    ss.:

On this _____ day of _____, 19 _____, before me personally

came _____, to me known and known to me to

be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

_____
Notary Public
(Seal and Address)

**For Acknowledgement of Individual Indemnitor's Signatures**

STATE OF _____

COUNTY OF _____    ss.:

On this _____ day of _____, in the year 19 _____, before me personally

comes _____, to me known, who,

being by me duly sworn, deposes and says that he resides in the City of _____, to me known, who,

_____ of _____ that he is the

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
Notary Public
(Seal and Address)

STATE OF __ MA _____

COUNTY OF __ Bristol _____    ss.:

On this _ 25th _ day of _ August _____, 19 _98_, before me personally

came _ Katherine L. Hebert _____, to me known and known to me to

be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002 _____

Notary Public          Guy Massa
(Seal and Address)

STATE OF __ MA _____

COUNTY OF _ Bristol _____    ss.:

On this _ 25th _ day of _ August _____, 19 _98_, before me personally

came _ Scott Hebert _____, to me known and known to me to

be the person(s) (or member of the firm) described in and who executed the foregoing instrument, and that he thereupon acknowledged to me that he executed the same.

My commission expires December 20, 2002 _____

Notary Public      / Guy Massa
(Seal and Address)

04/17/2003  13:06    2014761240                TONI VUOLO                         PAGE  12

### For Acknowledgement of Principal's Signature

**CORPORATE ACKNOWLEDGEMENT**

STATE OF _____ _____

COUNTY OF _____   ss.:

On this _____ day of _____, in the year 19_____, before me personally comes _____
being by me duly sworn, deposes and says that he resides in the City of _____, to me known, who,
_____ of _____ that he is the
the corporation described in and which executed the foregoing instrument;  that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Direct-
ors of said corporation, and that he signed his name thereto by like order.

Notary Public
(Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF _____

COUNTY OF _____   ss.:

On this _____ day of _____, 19_____, before me personally
came _____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

Notary Public
(Seal and Address)

### For Acknowledgement of Individual Indemnitor's Signatures

**CORPORATE ACKNOWLEDGEMENT**

STATE OF _____

COUNTY OF _____   ss.:

On this _____ day of _____, in the year 19_____, before me personally
comes _____
being by me duly sworn, deposes and says that he resides in the City of _____, to me known, who,
_____ of _____ that he is the
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of
said corporation, and that he signed his name thereto by like order.

Notary Public
(Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF ____MA_____

COUNTY OF __Bristol_____   ss.:

On this ___25th___ day of ___August_____, 19__98__, before me personally
came _John A. Pacheco_____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

My commission expires December 20, 2002                Notary Public      Guy Massa
                                                        (Seal and Address)

**INDIVIDUAL OR PARTNERSHIP**

STATE OF __MA_____

COUNTY OF __Bristol_____   ss.:

On this __25th___ day of __August_____, 19__98__, before me personally
came _Jamie K. Pacheco_____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

My commission expires December 20, 2002                Notary Public      Guy Massa
                                                        (Seal and Address)

04/17/2003  13:06    2014761240              TONI VUOLO                    PAGE  13

**For Acknowledgement of Principal's Signature**

<div style="writing-mode: vertical">CORPORATE ACKNOWLEDGEMENT</div>

STATE OF _____

COUNTY OF _____    ss.:

    On this _____ day of _____, in the year 19_____, before me personally

comes _____, to me known, who,
being by me duly sworn, deposes and says that he resides in the City of_____ _____ that he is the
the corporation described in and which executed the foregoing instrument;  that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Direct-
ors of said corporation, and  that he signed his name thereto by like order.

                                                  _____
                                                  Notary Public
                                            (Seal and Address)

<div style="writing-mode: vertical">INDIVIDUAL OR PARTNERSHIP</div>

STATE OF _____

COUNTY OF _____    ss.:

    On this _____ day of _____,19_____, before me personally

came _____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged  to me that he executed the same.

                                                  _____
                                                  Notary Public
                                            (Seal and Address)

**For Acknowledgement of Individual Indemnitor's Signatures**

<div style="writing-mode: vertical">CORPORATE ACKNOWLEDGEMENT</div>

STATE OF _____

COUNTY OF _____    ss.:

    On this _____ day of _____, in the year 19_____, before me personally

comes _____, to me known, who,
being by me duly sworn, deposes and says that he resides in the City of _____ that he is the
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation;
that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of
said corporation, and that he signed his name thereto by like order.

                                                  _____
                                                  Notary Public
                                            (Seal and Address)

<div style="writing-mode: vertical">INDIVIDUAL OR PARTNERSHIP</div>

STATE OF __MA__ _____

COUNTY OF __Bristol__ _____    ss.:

    On this __25th__ day of __August__ _____, 19 __98__, before me personally

came __Kristine Weizman__ _____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged to me that he executed the same.

My commission expires December 20, 2002      _____
                                                  Notary Public/  Guy Massa
                                                  (Seal and Address)

<div style="writing-mode: vertical">INDIVIDUAL OR PARTNERSHIP</div>

STATE OF __MA__ _____

COUNTY OF __Bristol__ _____    ss.:

    On this __25th__ day of __August__ _____, 19 __98__, before me personally

came __Avi Weizman__ _____, to me known and known to me to
be the person(s)  (or member of the firm)  described in and who executed the foregoing instrument,  and that he thereupon
acknowledged to me that he executed the same.

My commission expires December 20, 2002      _____
                                                  Notary Public/  Guy Massa
                                                  (Seal and Address)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

C. A. No. 2007 JAN 24 P 12: 12

U.S. DISTRICT COURT
DISTRICT OF MASS

———————————————————
COLONIAL SURETY COMPANY,           )
    Plaintiff,                            )
                                          )
                                          )
v.                                   )
                                          )
UNI-CON FLOORS, INC.,                )
KATHERINE L. HEBERT, SCOTT HEBERT,   )
JOHN J. PACHECO, JAMIE K. PACHECO and)
KRISTINE WEIZMAN,                    )
    Defendants.                          )
                                          )
                                          )
———————————————————

**AFFIDAVIT OF WAYNE T. NUNZIATA IN SUPPORT
OF COLONIAL'S MOTION FOR PRELIMINARY INJUNCTION**

I, Wayne T. Nunziata, upon oath hereby depose and state as follows:

1. I am of legal age and I am the President of Colonial Surety Company
("Colonial"), which is in the business of, *inter alia*, issuing performance bonds
and labor and material payment bonds ("Surety Bonds") on behalf of contractors
to secure the performance of construction contracts for public and private
projects.

2. I have first hand knowledge of the facts and circumstances stated herein and the
documents attached to Colonial's Complaint, which are referenced herein and
made part hereof, and which documents are true and accurate copies of the
documents presented.

3. I am responsible for handling claims against surety bonds underwritten by
Colonial.

4. Uni-Con is, or was at all times relevant hereto, in the construction business.

5. On August 25, 1998, and to induce Colonial to issue performance and payment bonds, Uni-Con Floors, Inc. ("Uni-Con"), Katherine L. Hebert, Scott Hebert, John J. Pacheco, Jamie K. Pacheco and Kristine Weizman, collectively ("Defendants" or "Indemnitors"), executed a General Indemnity Agreement ("Indemnity Agreement") in which the Indemnitors jointly and severally agreed to exonerate and indemnify Colonial for all demands, liabilities, loss, costs, damages, expenses and attorneys' fees Colonial may incur as a result of Colonial's issuance of Surety Bonds on behalf of Uni-Con. Exhibit A to the Complaint, ¶3.

<u>**New Bridgewater-Raynham Regional High School Project**</u>

6. On or about July 26, 2004, Uni-Con, as subcontractor, entered into a contract ("High School Subcontract") with Bacon Construction Co., Inc. ("Bacon"), as general contractor, wherein Uni-Con agreed to furnish the labor, materials and equipment necessary to perform certain tile work at the project known as the New Bridgewater-Raynham Regional High School Project in Bridgewater, Massachusetts ("High School Project").

7. Pursuant to the Indemnity Agreement, Colonial, as surety, furnished a performance bond and a labor and materials payment bond on behalf of Uni-Con, as principal, for Bacon, as obligee, for the High School Project.

8. On September 15, 2006, Bacon declared Uni-Con in default of the High School Subcontract and notified Colonial of same.

9. On September 29, 2006, Bacon terminated Uni-Con's High School Subcontract and made demand upon Colonial, pursuant to Colonial's performance bond, to complete Uni-Con's work at the High School Project.

10. Upon termination of Uni-Con's High School Subcontract, Colonial, as surety, assumed completion of Uni-Con's High School Subcontract and established a reserve to cover the anticipated costs of completing same as well as paying suppliers which furnished materials to Uni-Con for use at the High School Project.

11. As a result of Uni-Con's default on the High School Project, E. T. Tile And Stone, Inc. ("ET Tile") has made a claim in the amount of $8,200.00 against Colonial for labor and materials allegedly furnished to the High School Project.

### Williams Elementary School Project

12. On or about June 9, 2004, Uni-Con, as subcontractor, entered into a contract ("Williams School Subcontract") with Brait Builders Corporation ("Brait"), as general contractor, wherein Uni-Con agreed to furnish the labor, materials and equipment necessary to perform certain flooring work at the project known as the Williams Elementary School in Bridgewater, Massachusetts ("Williams School Project").

13. Pursuant to the Indemnity Agreement, Colonial, as surety, furnished a performance bond and a labor and materials payment bond on behalf of Uni-Con, as principal, for Brait, as obligee, for the Williams School Project.

14. On September 9, 2006 Brait declared Uni-Con in default of the Williams School Subcontract and notified Colonial of its obligation under the performance bond to cure Uni-Con's default on the Williams School Subcontract.

15. Colonial, as surety, promptly assumed completion of Uni-Con's Williams School Subcontract and established a reserve to cover all anticipated costs.

16. As a result of Uni-Con's default on the Williams School Project, Colonial has been named a defendant, along with Uni-Con, in a Massachusetts Superior Court matter captioned <u>Freudenberg Building Systems, Inc. v. Colonial Surety Company et al.</u>, Essex Superior Court, C. A. No. 06-01850 wherein the Plaintiff seeks $41,171.62 for materials allegedly delivered to the Williams School Project.

### The General Indemnity Agreement

17. The Indemnity Agreement defines the principal, Uni-Con, as being in default with respect to a bonded contract if, *inter alia*, the principal breaches, abandons or repudiates the contract, or if the obligee or any beneficiary of a bond declares the principal to be in default.  Exhibit A to the Complaint, ¶5.

18. In accordance with the Indemnity Agreement, Colonial notified Defendants of the reserves established for the High School Project and the Williams School Project and demanded Defendants provide cash or property as collateral security for the established reserves.  Exhibit A to the Complaint, ¶7.

19. Upon default, Colonial, as surety, may, *inter alia*, assume administration of any contract and arrange for completion thereof, and take possession of the principal's equipment, materials, office, book and records, etc. as may be necessary for the completion of the contract.  Exhibit A to the Complaint, ¶6.

4

20. Pursuant to the terms and conditions of the Indemnity Agreement, the Defendants are required "to indemnify and save harmless [Colonial] from and against any and all (i) demands, liabilities, loss, costs, damages or expenses of whatever nature or kind including fees of attorneys and all other expenses, ...." Exhibit A to the Complaint, ¶3.

21. Pursuant to the terms and conditions of the Indemnity Agreement, "[i]f a claim is made against [Colonial], or if [Colonial] deems it necessary to establish a reserve for potential claims, and upon demand from [Colonial], [the Defendants] shall deposit with [Colonial] cash or other property acceptable to [Colonial] . . . ." Exhibit A to the Complaint, ¶7.

22. On or about October 16, 2006, Colonial made demand (Exhibit B to the Complaint) upon Defendants for the following as permitted by the Indemnity Agreement: (i) indemnification (Exhibit A to the Complaint, ¶3); and (ii) security (Exhibit A to the Complaint, ¶7).

23. Despite Colonial's demand, the Defendants have failed and refused to respond or to indemnify, exonerate, or provide security to Colonial as required by the Indemnity Agreement.

24. As a result of the claims, lawsuits and performance obligations arising from Uni-Con's defaults, Colonial must investigate and either pay or defend claims, and incur substantial expenses in completing Uni-Con's work on the High School Project and the Williams School Project.

5

25. Colonial has set a reserve of $400,000.00 and has, to date, paid $381,597.97 in completing Uni-Con's work on the High School Project and the Williams School Project.

26. To date, the Indemnitors have not made any payments to Colonial.

27. Colonial's attorneys' fees and costs will continue to accrue as a result of Uni-Con's default on the High School Project and the Williams School Project.

28. Colonial will suffer irreparable harm if the relief requested in Colonial's Motion For Preliminary Injunction is denied as the funds and property of the Defendants will be forever lost, concealed and converted leaving Colonial no ability to recover same.

6

Signed under the penalties of perjury this 23rd day of January, 2007.

Wayne T. Nunziata, President
Colonial Surety Company

1606:016:affdPINunziata

7